**Henry Hood, Plaintiff-Appellee, v. Edgar Brinson and John Harris, Defendants-Appellants.**

Gen. No. 48,180.

First District, Third Division.

March 1, 1961.

 ■

McCoy, Ming & Leighton, of Chicago (William R. Ming, Jr., George N. Leighton, and Walter Black, of counsel) for appellants.

Alfred Roy Hulbert, of Northfield, for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff, Henry Hood, sustained fractures of both bones of his left leg as he was being taken from his home after midnight on March 15, 1958, by the defendants, Edgar Brinson and John Harris, two policemen of the Village of East Chicago Heights. His complaint charged negligence. There were no preliminary motions. The answer denied that the defendants were negligent or that the plaintiff exercised due care for his own safety; it asserted that as police officers the defendants were engaged in the performance of their duties and used only such force as was reasonably necessary to accomplish the plaintiff's arrest. The case was tried without a jury; the judge found for the plaintiff and assessed his damages at $15,500.-00.

The evidence is conflicting in regard to the arrest and the event leading up to it. Ella Sopson, who lived in the village a block from Hood, testified that late on the night of March 14th his auto, which had been zigzagging across the road, struck the back fender of her car. She said he stopped, got out of his auto but

"couldn't hardly stand up" as he talked to her. They conversed a few minutes after which he returned to his auto, cursed and told her to "do the best thing I could about it." He then went home and she drove three blocks to the parked squad car of the defendants. She reported the incident and then drove to Hood's home with the squad car following her.

Hood said he first heard of her accusation when she met him at the gate of his home when he arrived there about 12:00 p. m. After denying he had run into her car, he entered his home and went to bed. About 20 minutes later his wife told him the police wanted to talk to him. He dressed partially and went to the front room, where he saw the defendants and Mrs. Sopson. According to Hood the defendants told him to get on his clothes and to come to the police station. He asked them "for what?" but received no explanation. Because of Mrs. Sopson's being present he assumed it was in reference to her accusation, and he said he did not hit her automobile but if he had his insurance would take care of it. He kept asking unanswered questions about the reason for his arrest. When he said he had to put his shoes on Brinson replied, "I'll take you without any shoes," grabbed him and told Harris to put handcuffs on him. Harris put them on his left arm whereupon both officers pulled him out of the door. He resisted and Brinson struck him on the head. They scuffled from the front porch and fell down to the ground. There, while Harris twisted his handcuffed arm, Brinson choked him, beat him with his night stick, then ordered him to get up and walk. He told them he could not for his leg was broken. Brinson replied, "I will kill you if you won't get up and walk!" Neighbors intervened, convinced the officers his leg was broken and helped carry him to the police car. The defendants then took him to a hospital.

501

Hood's wife and three neighbors, who were aroused by her screams, corroborated his testimony. Two of the witnesses saw Brinson knock Hood from the porch onto the ground; all said that while he was lying on the ground Brinson hit him repeatedly with some object as Harris pulled his handcuffed arm.

The defendants and Mrs. Sopson testified that Hood refused to accompany the police; that it was he who first struck or grabbed Brinson; that they then wrestled to the floor, out of the door and from the porch to the lawn. They agreed that Harris did not handcuff Hood and that Brinson did not beat him or strike him with any object. They disagreed decidedly on other points. Brinson and Harris said that before they went to Hood's home Mrs. Sopson accompanied them to the station and signed two complaints, one for disorderly conduct and one for leaving the scene of the accident. Mrs. Sopson said that they went directly to Hood's home from the place where she talked to them. Brinson testified he had a warrant for Hood's arrest and that he showed both the warrant and the complaints to Hood. Harris testified that Brinson only said he had a warrant. Mrs. Sopson testified that Brinson just told Hood he was under arrest. Brinson said that he and Harris signed the complaints. Harris declared: "I did not sign any papers that night nor did I sign any papers in connection with Hood's arrest at any time." Harris denied having handcuffs with him. Brinson said Harris had them but did not use them.

█ Despite Brinson's statements about having a warrant the evidence is clear that none had been issued prior to the arrest. No offense had been committed or attempted in the presence of the policemen. Their authority for the arrest would have to be that a criminal offense had taken place and there were reasonable grounds for believing Hood committed it. Ill.

Rev. Stat., ch. 38, sec. 657 (1957). The story told them by Mrs. Sopson, together with the paint marks and the dent in the fender of her car and the corresponding marks and dent in the fender of Hood's car, which they examined in his driveway before entering his house, supplied sufficient grounds for Hood's arrest.

██ Whether Hood unjustifiably resisted arrest, whether the force used was necessary to accomplish his arrest, or whether he had been successfully restrained and thereafter needless force was applied, were questions of fact. Other issues formed by the pleadings and the evidence were whether Hood's conduct made him contributorily negligent, whether the defendants' negligence caused the fall from the porch, and whether Hood's leg was broken because of the fall or because of his being deliberately beaten by Brinson. These questions were for the determination of the trial judge and the answers to them depended, to a considerable extent, upon the credibility of the witnesses. In reviewing the evidence at the conclusion of the case the court said:

> ". . . there has been conflicting evidence . . . ; but the court has had a chance to sit here and study each witness and evaluate the weight of that witnesses testimony and their sincerity based upon all the factors that we can evaluate such evidence on—on their vocabulary, education, station in life and age, and appearance of sincerity or lack of it on the stand; and upon the evidence produced and with the background of what I have just said, the court feels impelled to find for the plaintiff."

The finding of the trial court will not be disturbed. Where the testimony is contradictory the trial court's finding is to be accorded the same weight as the verdict of a jury and will not be set aside unless it is

503

manifestly against the weight of the evidence. In re petition of Walters v. Coleman, 26 Ill. App. 2d 397, 168 N.E.2d 457; Mayflower Sales Co. v. Frazier, 325 Ill. App. 314, 60 N.E.2d 123.

The court also stated:

> ". . . I also truly believe that they used considerably more force than was required to make an arrest, even though it had been legal. We have two police officers who are apparently in good health, husky; and I think this arrest, even though it had been proper, could have been handled without the damages that were sustained here."

██ We agree with the conclusion of the court. The arrest was imprudent in the first place. If Hood ran into Mrs. Sopson's car, the damage was but a scraped fender. If he cursed, his conduct disturbed only her. If he left the scene of the accident, it was only after he had stopped, got out of his car and talked to her. If he did not give her his name, address and auto license number, as the statute also requires, his omission was a negligible infraction of the statute for she already knew his name and knew his address. If he drove while intoxicated, it is surprising the officers did not say they had a signed complaint for this, as they said they had for the two lesser offenses. For these minor, questionable violations the plaintiff was taken from his bed and his home in the middle of the night. For these he was to be put in jail and held for the rest of the night, for it was admitted that no magistrate was available. The identity of the plaintiff was known; he was not fleeing; he could have been dealt with the following day. There was no need to take him into custody at such an hour, under such circumstances, for such trivial offenses. Having made an initial error of judgment the defendants compounded it by abusing their authority. Hood's insistent ques-

tions may have irritated Brinson but they did not justify his violence. The force used was clearly excessive.

■ ■ In setting the plaintiff's damages the court said it was taking into consideration his loss of standing in the community and his expense in pursuing his claim. This case was brought and tried as a negligence action; these factors are not compensable damages in negligence cases. The court also stated that it was taking into consideration the plaintiff's loss of earnings from the date of his injury to November 15, 1959, when he returned to work. He did not testify, and there was no evidence, that his prolonged absence from work was due to his injury. He was hospitalized for two weeks, was on crutches for six months and did not work for more than a year thereafter. The burden was upon him to establish that his injury prevented him from working, especially from the time he no longer had to use crutches, until November 1959.

Because one unproved and two inappropriate elements were included in the computation of the damages, the case must be remanded with directions to reappraise the amount of the judgment.

Affirmed, except as to the amount of the judgment; remanded for the reassessment of damages.

SCHWARTZ, P.J. and McCORMICK, J., concur.