Estate of John Baskin, Deceased.
Anna Sukenik, Claimant-Appellee and Cross-Appellant, v.
Hinda Baskin, Administrator of the Estate of John
Baskin, Deceased, Respondent-Appellant and Cross-
Appellee.

Gen. No. 52,000.

First District, Third Division.

March 28, 1968.

J. Edward Jones, of Chicago, for appellant.

Nat. M. Kahn, Richard G. Kahn and Norbert N. Rosen-
thal, of Chicago, for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This is an appeal and cross-appeal from an order entered in the Probate Division of the Circuit Court. Hinda Baskin, the administrator of the estate of her father, John Baskin, appeals from that part of the order which allowed a claim for housekeeping services rendered to her father. Anna Sukenik, the claimant, cross-appeals from that part of the order which denied her a life estate in the first-floor apartment of the two-story apartment building owned by the decedent.

John Baskin, a widower, requested Anna Sukenik, a distant relative of his deceased wife, to keep house for him. She agreed and lived in his home for the three years preceding his death. In her claim she stated that Baskin promised to pay her for the household chores and to compensate her further with a life estate in his apartment, but that neither promise was kept. She placed the value of her services at $100 a week for 154 weeks or a total of $15,400. The trial court found that there was no express contract for her services. The court found, however, that there was an implied contract to pay her and awarded her the sum of $2,600; this was based on the reasonable value of the services for 130 weeks at $20 per week. Against this sum, the court allowed a setoff of $1,500 for rent due to the estate because she resided in the apartment without paying rent for ten months after Baskin's death. The court sustained the administrator's motion to strike the claim for specific performance of the promise of a life estate in the decedent's property.

The administrator contends that the claimant did not prove that there was an implied contract between her and the decedent, but if there was such a contract she was fully compensated. In the alternative the administrator argues that there was inadequate proof of the value of her services. In her cross-appeal the claimant acknowledges that the court could not have granted her

446

prayer for specific performance because the pleadings revealed that Baskin's property was held in a land trust for the benefit of himself and daughter which made the unilateral conveyance of his beneficial interest impossible. She contends, however, that she is entitled to damages in an amount equivalent to the monetary value of the life estate and estimates this to be $17,051.18.

No such contention was made by the claimant in the trial court. The closest approach to such a contention came at the conclusion of her case. Before resting, she offered in evidence tables showing her life expectancy. An objection was made which the court sustained. Her attorney then asked:

> "Would your rule be the same if we advised the Court that in the alternative, if the Court does not see fit to give us specific performance in a life estate, we ask for the value of a life estate in money; if we cannot get specific performance."

The court responded:

> "My rule would be the same in both. I would sustain the objection in either event."

This was nothing more than an intimation that there might be an alternative claim if the court did not grant specific performance. The intimation was never formalized. No motion to amend the claim was made at this time and no motion was made after specific performance was denied. While the claimant may have been discouraged from pursuing the subject because of the court's response, the suggestion that there might be an alternative claim cannot be considered a substitute for such a claim. Moreover, implicit in the court's finding that there was no express contract to reimburse the claimant for her services, was the finding that there was no contract to reimburse her with a life estate.

447

The claimant's witnesses testified that she shopped, cooked and kept house for Baskin from January, 1963, to December, 1965. They all testified that Baskin (who was ten years older than the claimant) said he was pleased with her work. Two of them testified that he told them he intended to pay her. One of them heard him say that he would take care of her as long as she lived; and the other one was present in the Baskin home when the claimant complained that she was not getting paid; the witness heard Baskin reply that he would take care of her and that she could stay in the apartment as long as she was alive.

Witnesses for the administrator testified to statements and actions by the claimant inconsistent with the alleged promises made by Baskin. Two neighbors said that after Baskin's death she inquired about renting an apartment or room; and one of them added that, in speaking of her financial circumstances, she said that Baskin had remunerated her for keeping house for him. Baskin's son admitted that the claimant was his father's housekeeper but testified that at no time after his father's death, although he saw her every week at the apartment, did she say anything about a life estate in the property. Baskin's daughter, the administrator of his estate, served an eviction notice upon her. The daughter testified that she did not claim a life estate at the time the eviction notice was served.

The administrator also introduced into evidence twenty-six checks of the decedent payable to the order of the claimant. These checks, dated from October 1, 1964, to December 12, 1965, were in small amounts of $5, $6 and $10, and totaled $156 in all. The stubs for some of these checks stated that the checks were for services. Also introduced were stubs without checks, dated from August 5, 1963, to October 24, 1965. These stubs totaled $235. With the exception of five stubs for $19 each, the stubs

were for $5 and $10. A few of the stubs indicated that the checks had been issued for labor and services. The claimant explained that in some instances she wanted to pay her personal bills by check and she gave Baskin cash in exchange for the checks. According to her, the $19 checks were in this category; she stated that these were to pay her hospital insurance.

■ ■ From the above testimony it can be seen that the evidence presented questions of fact as to whether or not the decedent expressly or impliedly promised to pay for the claimant's services and whether or not he promised to give her a life estate in his property. The conclusions of the trial court will be upheld on review unless they are manifestly against the weight of the evidence. Hood v. Brinson, 30 Ill App2d 498, 175 NE2d 300 (1961). Each finding made by the court was supported by substantial evidence: that the parties intended a nongratuitous relationship, that there was an unfulfilled obligation to compensate the claimant and that the decedent had not agreed to give her a life estate in return for her housekeeping.

■ In arriving at the amount of compensation due the claimant, the court took into consideration the testimony of one of her witnesses as to the prevailing rates paid housekeepers during the years 1963, 1964 and 1965. These rates were higher than the compensation the court allowed. But the court also took into consideration the testimony of witnesses for both parties that the claimant occasionally had part-time employment outside of the Baskin home. Their testimony disclosed that she worked at various times as a furrier's assistant, seamstress, babysitter and in a dry-cleaning establishment. The court's estimation of the number of weeks she worked for Baskin, and the figure he fixed as the weekly value of her services (in addition to her room and board and the small payments received by her), were reasonable ap-

■

proximations based on the testimony and evidence presented at the hearing. The court's conclusions were not against the manifest weight of the evidence.

The other contentions raised by the parties are without merit and need not be reviewed.

The judgment of the Circuit Court is affirmed.

*Affirmed.*

SCHWARTZ and SULLIVAN, JJ., concur.