Nathan Dvorson, Plaintiff-Appellee, v. City of Chicago, a Municipal Corporation, and Sidney D. Smith, Commissioner of Buildings of the City of Chicago, Defendants-Appellants.

Gen. No. 53,949.

First District, Third Division.

January 8, 1970.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Howard C. Goldman, Assistant Corporation Counsel, of counsel), for appellants.

David Chaimovitz, of Chicago, for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

In March 1968 the City of Chicago issued a building permit authorizing the plaintiff to construct a 56-apartment building. In September 1968 the permit was revoked. The plaintiff filed a complaint for declaratory judgment and a petition for an injunction to restrain

the City from interfering with the construction. The defendant's answer admitted that the permit had issued but asserted that it became void because construction was not begun within six months from the date of its issuance as required by the Municipal Code of Chicago. The answer also denied an allegation in the complaint that the requisite zoning classification was in effect from the time the plaintiff acquired the property in 1963 until the permit was cancelled in 1968. After a hearing on the issues, the trial court ruled that the plaintiff had a right to proceed and enjoined the City and the commissioner of buildings from interfering with the construction of the proposed building. A motion to vacate the decree was denied.

The evidence at the trial and the undenied allegations in the complaint (Ill Rev Stats 1967, c 110, par 40(2)) established that the property was purchased in 1963 and that it was zoned R-4, a classification which permitted multiple-apartment buildings. In 1966 the plaintiff employed an architect to consult with the City's building department to find out how many apartments could be built under the R-4 zoning. The architect prepared plans and specifications which were submitted to the department in March 1966; the plans, which called for 56 apartments, were approved by the City. The plans were also submitted to the Federal Housing Administration, which made a preliminary commitment in response to the plaintiff's request for a mortgage loan. An agreement was made to pay the architect $49,000 for his plans and for his supervision of the project, and $32,670 of the fee was paid on account. The plans were completed, a firm commitment was received from the Federal Housing Administration and a building permit was issued by the City on March 6, 1968, for which the plaintiff paid $1,672. In addition to the architect's fee and the permit fees, the

plaintiff invested $90,000 in the land, paid the Federal Housing Administration an examination fee of $2,811 and became obligated to subcontractors who were engaged to construct the building.

The plaintiff testified that after successful negotiations with the Federal Housing Administration for a larger loan he employed a survey company to stake out where the building would be placed on the land, and to prepare grades and sidewalks. He said that men from the company were working on the property on September 4, 1968, and that the contractor's construction trailer was stationed there on September 6th. He did not visit the site on September 5th. An associate of the plaintiff testified that he saw the men survey the land, drive stakes into the ground and do other preliminary work on both September 4th and 5th and that the trailer was parked on the property on the 5th.

An inspector for the City's building department testified that he observed no activity at the property on September 9th and 10th. He looked for stakes but found none. He stated that he would not consider the placing of surveyors' stakes as the beginning of construction; that in his opinion and according to his department's instructions, construction starts the moment excavation begins. On cross-examination he said he had been informed that a truck had been on the property and men had been there. He also said that he did not enter the property itself but just walked along the front of it and on its perimeter, and that he thought he would find stakes on the corners of the lot. He acknowledged that laying out building lines was a necessary preliminary to construction and that this was an integral part of excavation.

From the testimony and the exhibits the trial court found that the plaintiff, in reliance on the R–4 zoning,

had made a large investment and had become liable for substantial sums of money. The court held that a vested right accrued to him and that the permit, therefore, was in full force and effect. The court also found that it was more probable than not that the staking did take place on September 4th and that this constituted construction within the meaning of the Municipal Code.

The defendants' first contention is that the plaintiff did not prove that the plans for the building complied with the zoning classification in effect at the time the permit was issued. The evidence was undisputed that the property was zoned R–4 when the plaintiff bought it in 1963 and it was zoned R–4 in 1966 when the City approved the plans and specifications for a 56-apartment building. Circumstantial as well as direct evidence can be used to prove facts. Although the plaintiff did not testify that the property was zoned R–4 in March 1968 when the plans were formally approved and the permit received, the fact that the City issued a permit based on the plans justified the inference that the same zoning prevailed in 1968 as in 1966 and 1963. The plaintiff met his burden of proof and the evidence adequately supported the court's decree.

The principal issue at the trial was whether construction of the building commenced within six months after the issuance of the permit. The defendants contend that the court erred in finding that it did. The first question arising under this issue concerns the evidence; the second involves an interpretation of the City's ordinance. The plaintiff's evidence showed that two days before the expiration of the six-month period, two men surveyed the land, determined the grade of the lot, placed marks on the sidewalk and drove stakes into the ground, and that on the following day a construction trailer was at the site. The City's evidence was that a building inspector visited the property a number of times, including September 9th and 10th,

and saw no activity. He also said that on one of those days he looked for surveyor's stakes in the high grass and found none.

 In a nonjury trial the court must determine the credibility of the witnesses and the weight to be given to their testimony. His decision will be upheld unless it is against the manifest weight of the evidence. Hood v. Brinson, 30 Ill App2d 498, 175 NE2d 300 (1961). The court's finding that the property was surveyed and stakes laid on September 4th was supported by substantial evidence.

The second question is whether determining the grade of the lot and placing stakes and other marks on the ground locating the position of the planned building constituted compliance with section 43–9 of the Municipal Code which provides:

> "If, after a building or other required permit shall have been granted, the operations called for by such permit shall not be begun within six months after the date thereof, such permit shall be void. . . ."

The City's argument is that an owner of a lot does not need a building permit to have his property surveyed; that an owner could have this done at any time to determine the feasibility of a prospective building or to decide whether a contemplated venture was advisable. The instant case differs from the City's example. Here, the stakes and markings laid out a particular building for which the plans were drawn and which was about to be erected; they were not used for the possible construction of an unplanned building in the distant future.

 "Operations" is a broad term encompassing more than excavation into the earth preparatory to fabrication of a building. Surveying the lot upon which a building is about to be erected and laying out stakes marking its location are integral parts of the construction process.

363

They are prerequisite to excavation and are within the "operations called for" by a building permit.

Within thirty days after the decree the City filed a motion to vacate on the ground of newly discovered evidence. The motion alleged that at the time the permit was issued in March 1968 part of the property was not zoned R–4; that the zoning as to the north half of the lot had been changed to R–3 in July 1967 and that this barred construction of the proposed building. During the hearing on the motion it was also said that the permit was erroneously issued because the plans did not provide for the requisite number of square feet per dwelling unit; that if a building is adjacent to a public open space of five or more acres a lesser number of square feet is required than if it is not; that subsequent to the court's decree the City measured the park across the street from the property and discovered it was something less than five acres—the size it was assumed to be when the plans were approved. The court denied the motion to vacate and refused to allow the defendant to make an offer of proof concerning the amendment to the zoning ordinance and the size of the park. The City contends that both rulings were improper.

 To justify setting aside a judgment or decree on the basis of newly discovered evidence it must be shown that the new matter was not known to the moving party at the time of trial and could not have been discovered by him with the exercise of reasonable diligence. J. B. Inderrieden Co. v. Gill, 373 Ill 180, 25 NE2d 796 (1940). It was conceded at the hearing that the information concerning the zoning reclassification and the size of the park was available to the City before the trial; the zoning ordinance was published, and the park adjacent to the property was open to inspection. The City's argument is that the trial court denied the motion

to vacate and the offer of proof for another reason: that the court concluded that even if the permit was wrongfully issued, the City would be estopped from revoking it due to the expenditures of the plaintiff in reliance thereon. The City says the court's reason was error and relief should be granted because of this. We need not consider whether the court's reason was erroneous. A wrong reason given by a court for its decision is of no importance if the decision itself is correct. Miller v. Chicago Transit Authority, 78 Ill App2d 375, 223 NE2d 323 (1966). The evidence sought to be introduced by the City was not newly discovered; with reasonable diligence it could have been discovered and used at the trial. Indeed, the City admits that it was in the file of the trial attorney at the time of the trial. The ruling of the trial court was correct and will not be disturbed.

■ Finally, the City argues that the court erred in entering a permanent injunction prohibiting the City from interfering with construction proceedings by the plaintiff. It protests that this prohibits the City from acting under section 43–10 of the Municipal Code which authorizes the commissioner of buildings to order a permit holder to stop construction if it is being done contrary to the approved plans. The City's concern is unfounded. The decree states that the defendants,

> ". . . are herewith enjoined and restrained permanently from interfering with plaintiff from proceeding with the construction of the improvement under Building Permit No. B–398196 issued on March 6, 1968, pursuant to the plans, plaintiff's exhibit 1, and in accordance with the Building Code of the City of Chicago."

By prohibiting the City from interfering with the construction of the improvement "pursuant to the plans" it

allows the City to act pursuant to the Code if the plaintiff violates the Code or does anything contrary to the plans for which the permit was issued.

The decree is affirmed.

Affirmed.

SCHWARTZ and McNAMARA, JJ., concur.