AUSTIN LIQUOR MART, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

(No. 58789;

First District (4th Division)—March 27, 1974.

William J. Scott, Attorney General, of Chicago (Bonny Sutker Barezky, Assistant Attorney General, of counsel), for appellants.

William J. Harte, Ltd., of Chicago, for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The defendant, Department of Revenue of the State of Illinois, brought this appeal from a decree of the Circuit Court of Cook County, heard on remand from the Supreme Court of Illinois (*Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill.2d 1), quashing subpoenas and enjoining the Department of Revenue from examining certain books and records. Upon remand the court held that he first was required to determine whether the taxpayer was being harassed:

> "THE COURT: In the event that I find they are being harassed, you are not entitled to subpoena.
>
> MR. BROMBERG (Assistant Attorney General): That is correct."

Accordingly, the court ordered evidence presented on that issue.

The issues for review are whether the supreme court, in remanding the cause for further proceedings, intended the circuit court to determine whether there was evidence of abuse of the court's process, and whether there is evidence to support the determination by the trial court that there was an abuse of the court's process resulting from the harassment of the plaintiff.

At the end of July, 1969, the plaintiff submitted its books and records to the Department for the 3-year period, August 1, 1966, to July 31, 1969, seeking a release from liability under the Retailers' Occupation Tax Act in order to sell one of a chain of retail liquor stores which it owned and operated in Cook County.

The Department kept the books and records until August 19, 1969, when it issued a notice of tax liability in the amount of $15,194.28, which the plaintiff paid on the following day.

The Supreme Court of Illinois reviewed that part of this case wherein the trial court had enjoined the Department of Revenue of the State of Illinois from examining the plaintiff taxpayer's books and records a second time, after the plaintiff had paid the assessment, as levied by the Department, in full. The case at that point did not contain any evidence or testimony regarding harassment or threats to the taxpayer because the trial court had not heard that question. In a four-to-three opinion, the supreme court remanded the cause to the circuit court, citing the case of *United States v. Powell*, 379 U.S. 48, 58, 13 L.Ed.2d 112, 120, 85 S.Ct. 248, 255, which case discusses harassment of a taxpayer and the abuse of judicial process.

In the instant case, the circuit court, after remand, heard testimony as to the arrest and treatment of the plaintiff corporation and its officers by the Revenue Department agents and made the following findings: (1) that the issuance of the first and second *subpoenas duces tecum* was an abuse of judicial process, violated the law of the State of Illinois, and did harass and discriminate against the plaintiff; (2) that the Department was not authorized by law to arrest any taxpayer without issuance of an arrest warrant upon proper affidavit by a court of competent jurisdiction; that the Department did so make an illegal arrest in this case and did undertake to assume power not delegated to it by the legislature; (3) that the legislature has delegated to the Department the right to file a complaint under oath in a court of competent jurisdiction and ask that a warrant for the arrest of a disobedient taxpayer be issued; that the Department did not follow this procedure and singled out the plaintiff herein and with 12 to 14 agents of the Department went to the taxpayer's place of business with an unverified complaint; that the Department did not properly and legally file an affidavit and complaint with the clerk of the Circuit Court of Cook County and did not appear with said complaint and affidavit before a judge of the Circuit Court of Cook County and ask that a warrant issue, and that the failure to conform to this basic rule is an abuse of judicial process; and (4) that the arrest, taking into custody, jailing and fingerprinting of the officers of the taxpayer corporation was an abuse of judicial process in that the Department has singled out, discriminated and harassed this plaintiff. Wherefore, the court ordered, adjudged and decreed:

> "The plaintiff's motion to quash the *subpoena duces tecum* issued by the Department of Revenue on November 24, 1969 and a second *subpoena duces tecum* issued by the Department on

December 2, 1969, directed to the plaintiff to produce all its books and records for the period January 1, 1967 to November 24, 1969, is sustained and the *subpoenas duces tecum* are hereby quashed, dismissed and held for naught and that the defendant Department of Revenue, the Director, and their agents, representatives and or successors are permanently enjoined and restrained from conducting any investigations or holding any hearings pertaining to the Retailers' Occupation Tax Act in any manner whatsoever including sales records and reports, journals, ledgers, invoices, bills of sale, Federal Income Tax * * * and all other business operations of plaintiff pertaining to said operation for the period August, 1966 to July 31, 1969 and the Department's motion filed December 1, 1972 to produce plaintiff's books and records for said period is denied in its entirety."

The record shows that on November 24, 1969, the Department issued a *subpoena duces tecum* directing the plaintiff to produce all of its books and records for the period January 1, 1967, to November 24, 1969. The plaintiff's attorney appeared and filed a motion to quash, alleging no prior notice, harassment and an improper subpoena. The motion was taken under advisement by the hearing officer, but prior to a decision, another *subpoena duces tecum* was issued seeking the production of the books and records for the same period. The plaintiff's attorney again made a motion to quash and it was again taken under advisement by the hearing officer.

Both motions to quash were denied on December 8, in a letter to the plaintiff's attorney, who then appeared before the hearing officer complaining about the implied threat of arrest contained in the letter by reference to section 452 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1969, ch. 120, § 452), which is penal in character, and also complaining that the Department considered the subpoenas as first and second demands for the books and records.

In reply to his argument the hearing officer stated, "The last thing this Department is interested in is arresting these clients of yours."

Two days later, without any further communication with the taxpayer, its lawyer, or the officers of the corporation, Anthony and Benedict Fillichio were arrested by agents of the Department. Six agents led by John Johnson appeared at the store where the arrest was made and other agents appeared at various of the other stores in the chain. Only two witnesses testified in the instant trial, both agents of the defendant Department of Revenue, called by the plaintiff.

Mr. Johnson testified that for 14 years prior to his employment with the Department, he was warden of the Cook County Jail. His formal

educational background included 2 years at Northwestern University in police administration and criminology. He has had some 32 years' experience working in the area of criminology, dealing with arrests and people who commit crimes. On December 12, 1969, he was employed by the Department as an investigator. On that date there were approximately 14 or 15 investigators in the Department's Chicago office. He further testified that on December 12, he arose at 5:30 A.M. for an early morning meeting at Dempster and Waukegan Avenues with three other investigators (Maloney, Kelleher and Beason) so as to get together to proceed to the taxpayer's premises in Glenview. They had received their orders on December 11 from John Gallagher in the Department's Chicago office. Other officers of the Department were assigned to the investigation of the taxpayer that day; Johnson estimated about 10 or 12, but he did not know how or where they were assigned.

They proceeded in two cars to the taxpayer's Glenview store and arrived about 7:30 A.M. The three other investigators waited in the car while Johnson entered the store next door to the taxpayer's offices and spoke to a clerk. He identified himself and asked if either the president or vice president of the taxpayer was there. Neither was in the store. He left the store and with another agent ten minutes later went next door to the taxpayer's offices where he had identified himself to Benedict Fillichio, taxpayer's vice president. Johnson testified he showed his credentials, stated he was there as an agent of the Department, and that if Benedict failed to produce the books and records, he was authorized to make an arrest. Benedict stated he had no such authority and would have to get Mr. Anthony Fillichio. Benedict then asked to make a telephone call.

Johnson further testified that he then had a telephone conversation with Anthony Fillichio, taxpayer's president, who wanted to know what it was all about. Johnson stated he was there to see the books and records. (Johnson later admitted that at the criminal proceeding he told Anthony Fillichio on the telephone that they were there to make an arrest if the books were not shown.) Anthony then stated he would come to the premises and arrived 10 to 15 minutes later, or about 11 A.M.

When he arrived, Johnson stated they were there to see the books and records. Anthony said that the books and records Johnson was after were not on the premises. Johnson then told him he would have to place both Anthony and Benedict under arrest, which he did. Johnson later stated that before making the arrests he called one Edward Meeci at the Department's office, who confirmed his prior directions to make the arrests. Anthony asked to make a telephone call, which he did, and they then left the premises.

During these proceedings, another car from the Department had arrived, making three cars in all, with six agents. The Fillichios were then taken to the Department's Chicago office and later to 11th and State Streets for booking. Johnson identified plaintiff's exhibits 3 and 5, the arrest records of both men; he was listed as the arresting officer.

Upon further interrogation Johnson admitted that the day before he went on the premises, the complaints had been given to him by John Gallagher. They had a meeting the afternoon before in which instructions were given to the teams going out. They were to go in and ask for the books and records, and if the taxpayer agreed they were to call the office. If the taxpayer refused they were to place the officers under arrest, advise them of their rights, and bring them into the office. Although the complaints read that John Gallagher had appeared before the circuit court, Johnson didn't know if he appeared before a judge. Johnson did not know who prepared the so-called misdemeanor complaints.

Johnson further stated that to his knowledge it was not customary to get the complaints from Gallagher and make arrests before they are presented to a judge. In this one case he was given the papers and told to go out there. In other cases, if there is a question of refusal and there is an arrest to be made, they take the documents before a judge, inform him of the refusal, the judge orders them produced, and if they are not, the taxpayer is in contempt of court. In counties other than Cook, they go through the State's Attorney and go before a judge, who signs them. Johnson admitted he knew how to do it the right way.

In response to the court's direct question as to the reason it was done differently in this case, Johnson stated he could not answer that because he did not know. He did not know there were proceedings to quash the subpoenas which had previously been served.

Johnson admitted he was not an auditor and was not qualified to make an audit of the taxpayer. At the trial, Johnson denied he was on the premises to make an audit of the taxpayer's books and records. He was there to determine whether the books were on the premises to "check them out," to determine whether there were irregularities in the entries in the books. This was not to be an audit. Johnson was impeached from a prior inconsistent statement under oath where he stated his purpose in demanding the books that morning was "to produce them in the office of the Revenue Department for the purposes of audit."

Mr. John Gallagher testified that he was a supervisor in the Investigation Division of the Department of Revenue. He stated that on December 11, 1969, he and six other investigators were told by Roswell Spencer, the chief investigator, they were going to request the books and records

of the taxpayer on the following morning and if they were not produced, they would arrest the officers of the corporation.

Gallagher admitted he was instructed to and filled out the complaints on December 11 in the office. He swore to the facts stated in the complaints, but did not recall if the date December 12 was on the complaints at the time, although he knew they were going to the taxpayer's premises the next day. He did not appear before Mr. Danaher, Clerk of the Circuit Court, and swear to the document. He first appeared before a judge on January 23, 1970. He was familiar with the statutory procedure of the issuance of a subpoena, and if it was disobeyed, he would appear before a Circuit Court judge for an order of production and then a contempt holding in the event they were not produced. They did not follow that procedure in this case because they were instructed to do it this way. He did not know he was violating the law and no one told him he was.

Gallagher further testified that usually an auditor would accompany him on a visit to a taxpayer's premises and he would conduct an audit of the books and records. Gallagher had never had occasion to have a retailer refuse the books. None of the men at the taxpayer's premises was an auditor. On that morning he was assigned to the taxpayer's store in Northbrook. Somebody was also assigned to the Skokie store and the Dempster Street store. Two men were assigned to each store; 10 or 12 agents in all were assigned. At the Northbrook store he asked for Anthony or Benedict Fillichio but not the books and records. When he was told neither man was there, he left the store and telephoned the office. He was told that Mr. Johnson was in touch with both the Fillichios.

Gallagher then went to the Glenview store, arriving at about 10 A.M. After Johnson effected the arrest of Anthony and Benedict, they all proceeded to the Department's office in downtown Chicago. The arrest slips were filled out and they then went to the police station at 11th and State Streets. The two men were delivered to the lockup keeper while their attorney was making bond. He did not know how long the men were there before they were released.

On examination by his counsel, Gallagher stated that Spencer had an auditor available to send out to the premises to audit the books and records in the event they were produced. He further stated the procedure of swearing to the complaints prior to the arrest was for the convenience of the taxpayers who were to be arrested so they can be processed quicker.

The charges against Anthony and Benedict Fillichio were subsequently summarily dismissed by Judge Arthur Dunne.

The instant case is replete with instances of harassment which reflect

on the good faith of the investigation. When the Department wanted to re-audit the plaintiff corporation, they did not give written notice as required by statute, but issued two subpoenas. Next, the letter written to plaintiff's attorney denying the motions to quash implied that arrests would be made if the books and records were not made available and further stated that the subpoenas would be treated as first and second demands for the books and records.

As a result, the plaintiff's attorney appeared before the hearing officer in the Department's offices to protest the procedures being employed, and his outrage, while self-serving in character, nonetheless summarizes the methods used by the Department, when he said:

"Where the statute calls for a notice in writing, your notice is a subpoena, or an arrest warrant, and you are impliedly threatening you are going to arrest and incarcerate the citizens of the State of Illinois. Your conduct makes it very clear you are not interested in tax collection at all, but only in persecuting and prosecuting and threatening citizens and taxpayers of Illinois by unauthorized prosecution purely for interests of personal aggrandizement and publicity.

\* \* \*

I wish to apprise you that the Courts have held that you are an administrative agency and are not a prosecutor and the taxpayer not an accused, but these are intended to be impartial hearings designed to elicit the facts.

\* \* \*

Your conduct and threatened conduct compels me to address your summary preemptory treatment of this taxpayer to the Courts of the state, and the Department fails to recognize—or chooses to ignore the fact—that its denial of the taxpayer's motion to quash the subpoenas is a final appealable order from which the taxpayer has thirty-five days to file his administrative action, and despite the fact that this matter is still pending and not a legally resolved issue, the Department of Revenue is prosecuting and threatening to proceed criminally.

\* \* \*

MR. FIORITE: The only thing I would add is, of course, the Department is only interested in the collection of tax money. There is no interest whatsoever in making an arrest. The last thing this Department is interested in is arresting these clients of yours."

Two days later the plaintiff's corporate officers were arrested by a task-force type operation of a dozen or more agents, none of whom was an

auditor, even though it was standard procedure to have one present.

On the same day as the arrests, and without any knowledge they had taken place, the plaintiff's attorney filed a petition in the Circuit Court of Cook County charging that the Department was threatening criminal action and denying statutory remedies. It prayed that the court enjoin the Department from re-examining the books which had been audited and from proceeding in the investigation in a manner "other than as it does all other taxpayers."

The defendant filed its answer and counterclaim on January 14, 1970, alleging on information and belief that the plaintiff had not delivered all of its books and records for audit and had failed to report the total amount of gross receipts for the period in question. The defendant requested the court to compel the production of plaintiff's books and records for reassessment and to enjoin the plaintiff from operating its business because of its failure to file annual information returns.

The only evidence adduced at the March 24, 1970, trial was a copy of the notice of tax liability and proof of payment. The Department elected to stand on its counterclaim and not to present any proof. The court held that the defendant was estopped from further investigation of plaintiff's books and records for the period in question when it issued the assessment of tax liability and accepted payment. The court also found the defendant's counterclaim to be insufficient, holding that a request for injunctive relief cannot be supported by allegations on information and belief.

The Supreme Court of Illinois reversed the judgment and remanded the cause back to the trial court which then held that it was required by the supreme court opinion to determine whether the plaintiff was being harassed, and accordingly ordered evidence presented on that issue.

In urging this court to hold that the trial court misinterpreted the mandate of the supreme court, defendant basically advances two arguments: (1) that there was no basis in the opinion of the supreme court for an inquiry into whether there was harassment, coercion or abuse of the court's process; (2) that in any event, these issues were decided by the supreme court. Plaintiff argues that neither argument is supported by a careful reading of the opinion of the supreme court. Furthermore, Mr. Bromberg, Assistant Attorney General, agreed with the court that if the court found the plaintiff was being harassed, the defendant was not entitled to subpoenas.

As defendant correctly states, the issue posed by the majority opinion was "whether defendant may be estopped from examining plaintiff's books and records for the period in question because of its previous

assessment and acceptance of payment for that period." The supreme court held that defendant was not estopped on that ground except in "extraordinary circumstances," such as those present in *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill.2d 427. Since plaintiff had not shown such "extraordinary circumstances," defendant was not estopped by reason of a previous assessment covering the same period. However, even though a previous assessment would be no bar except in "extraordinary circumstances," the court held (citing *United States v. Powell,* 379 U.S. 48) that the Department would be barred if the taxpayer could show that the court's process had been used for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for "any other purpose reflecting on the good faith of the particular investigation." As the court also stated:

> "Our holding that payment by a taxpayer of a prior assessment covering the same period of time is not a bar to subsequent investigation does not, however, leave the taxpayer without protection. Even in areas where the need is as compelling as is the necessity for public revenue the court may inquire as to the reasons underlying the request for examination and issuance of the subpoena." (51 Ill.2d at 6.)

The court's decision that defendant was not barred by the prior assessment was conditioned on the premise that the court was free to determine the good faith of the Department, that is, whether "the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell,* 379 U.S. 48, 58.

Further, the supreme court determined that "the trial court proceeded in a mistaken belief that the burden was upon the State to establish fraud by the taxpayer as a condition precedent to examination of the books for the previously audited period * * *." (51 Ill.2d at 8.) The trial court proceedings then were conducted upon a mistaken theory which would preclude reassessment absent a showing of fraud by the Department. Such a theory would require no showing of harassment, intimidation or abuse of process. Accordingly, the first trial left open these issues which were later specifically raised in the court's opinion.

■■ Where a case has been tried on an erroneous or mistaken theory of law, it will be remanded for further proceedings consistent with the directions of the reviewing court. *Gannon v. Chicago, M., St.P. and P. Ry. Co.* (1961), 22 Ill.2d 305; *Cihal v. Carver* (1948), 334 Ill.App. 234; *Keel v. Illinois Terminal R.R. Co.* (1952), 346 Ill.App. 169.

■■ We hold the trial court followed the mandate of the Supreme Court

and proceeded properly, putting the burden on the plaintiff to show improper, illegal use of process, harassment and other purposes reflecting on good faith.

The evidence in this record of the Department's harassment, coercion, intimidation and abuse of the court's process is not only overwhelming, but it comes from the lips of its own personnel.

■■ In cases such as this where the witnesses have physically appeared and have testified in open court, the trial court's determination is to be accorded the same weight as the verdict of a jury and will not be set aside on appeal unless it is manifestly against the weight of the evidence (*Hood v. Brinson* (1961), 30 Ill.App.2d 498), or is palpably or manifestly erroneous. (*Prudential Insurance Co. v. Spain* (1950), 339 Ill.App. 476.) Or, as stated by the court in *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill.2d 352, 356:

> "Although a trial court's holding is always subject to review, this Court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Brown v. Zimmerman*, 18 Ill. 2d 94, 102; *Illinois Nat. Bank & Trust Co. of Rockford v. County of Winnebago*, 19 Ill.2d 487, 495; *Mortell v. Beckman*, 16 Ill.2d 209.) Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different conclusion."

In expressing the manifest weight of the evidence test as applied to a trial court sitting as a finder of fact, the Illinois Supreme Court said in *Brown v. Zimmerman* (1959), 18 Ill.2d 94, 102:

> "[Where] the determination of this case depends largely upon the facts to be found in the record * * * the findings and judgment of the trial court, in chancery and non-jury cases, will not be disturbed by the reviewing court, if there is any evidence in the record to support such findings."

The evidence in this case shows undisputably that following the taxpayer's voluntary submission of its books and records, the audit of those books by the Department, and notice of tax liability emanating from that audit, and the payment of such tax liability of the taxpayer, the Department entered upon a course of action to intimidate, coerce, punish and jail the taxpayer's officers through illegal procedures and vilification

in the public press. The trial judge properly disregarded newspaper articles as not being evidence and stated the court would not be intimidated by newspaper articles. Mr. Bromberg, the Assistant Attorney General, characterized it as "horrible" and promised the court to ascertain who was responsible for the articles.

Totally apart from the instant proceeding on remand from the supreme court, the record made in the first trial is sufficient to support the finding of the Department's lack of good faith. The day the "decision" of the hearing officer denying the motion to quash was received by the taxpayer, the taxpayer's attorney appeared before the hearing officer complaining of the implied threat of arrest and incarceration in the letter articulating the decision. He complained of the procedures employed by the Department in that they demonstrated its intent to persecute, prosecute and ultimately arrest the taxpayer's officers. This was December 10. Two days later, the taxpayer's officers were arrested and jailed.

As to the first trial, three judges of the supreme court found that on the first record alone the trial court did "inquire as to the reasons underlying the request for examination." The instant hearing strengthened the record to demonstrate the Department's abuse of power. Some 10 to 12 agents planned the arrest procedures on December 11. On that day Gallagher swore to facts which were to occur the next day.

Other significant facts indicate the Department had little interest in the books and records, such as: (1) The usual procedure was to send an auditor with the agents. Of the 10 to 12 men on the raid, not one was an auditor or qualified as an auditor. (2) When Gallagher made his raid on the Northbrook store, he did not even ask for the books and records. He only wanted Anthony and/or Benedict Fillichio. (3) When Johnson asked for the books and records at the Glenview premises and was told they were not there, he made the arrests anyway. (4) Johnson was impeached by a prior sworn inconsistent statement when he said he was there to make an on-site inspection of the books and records. (5) Johnson said the procedures employed against the taxpayer had never to his knowledge been utilized against any other taxpayer. (6) Gallagher's attempt to explain the utilization of perjured complaints as a "convenience" to the arrestees. (7) And finally the illegal procedures themselves. This department relegated to itself the power to arrest citizens and taxpayers without any statutory authority, without any executive authority, and without any judicial sanction whatsoever. It misappropriated court process and utilized it at its own whim.

■■ Process is defined as "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property."

(*Holiday Magic, Inc. v. Scott* (1972), 4 Ill.App.3d 962.) Such utilization of the court's process to harass a person has always been condemned. (*Nemanich v. Long Grove Country Club Estates* (1970), 119 Ill.App.2d 169.) The requirement of the actual arrest of a person is satisfied here. (See *John Allan Co. v. Brandow* (1965), 59 Ill.App.2d 328.) The utilization of process to "intimidate, oppress or punish a person against whom it is sued out * * * is 'malicious use of process.'" *Lerner v. Borack* (1914), 189 Ill.App. 603, 604.

In its opinion, the majority in the supreme court commented on the attempt by the Department to file an amendment to its answer and counterclaim before the first decree was entered. The basis for the amendment was allegedly the possession of the taxpayer's Federal income returns. The court noted that the trial court denied the requested amendments as coming too late. The majority commented that this ruling is not prejudicial error unless there has been a manifest abuse of the trial court's broad discretion, and since the proferred amendment was not included in the record on appeal, they were unable to determine whether "a manifest abuse of discretion was here present." The minority felt the refusal of the Department to present any evidence after the repeated requests to do so by the trial court justified the court's decision in favor of the taxpayer on the issues, stating the amount of tax asserted by the Department was prima facie correct and, once established, "the burden shifts to the Department to prove its case by competent evidence."

In the instant hearing before the trial court on remand, the Department attempted to introduce these same allegedly inconsistent Federal income tax returns. However, upon inquiry by the court, the Department admitted it had this evidence at the first trial before the proofs were closed and notwithstanding the repeated requests by the court to introduce evidence, it refused or elected not to do so. Accordingly, the trial court refused to admit the evidence. The offers of proof made by the Department in the hearing on remand were totally improper as to form. Instead of asking the witnesses to give testimony, the Department's attorney summarized their testimony in a narrative unsworn statement. Consequently the offers of proof cannot be considered on appeal. *Schmitt v. Chicago Transit Authority* (1962), 34 Ill.App.2d 67; *Hession v. Liberty Asphalt Products, Inc.* (1968), 93 Ill.App.2d 65.

■■ The fact the purported evidence was in the possession of the Department at the time proofs were closed, and its refusal even to offer the evidence after repeated requests to do so by the trial court at the first trial, demonstrate the trial court did not abuse its discretion in refusing to admit the evidence at the subsequent hearing, to permit any amendment of the pleadings based on the evidence, or to open proofs to

admit evidence which could have been offered prior to the closing of proofs.

We think the plaintiff taxpayer has established by an overwhelming weight of the evidence that this case comes within the *Powell* case, *supra,* as to the harassment of the taxpayer, the abuse of process, and other purposes reflecting on the good faith of the particular investigation. Furthermore, we also believe this case comes within the "extraordinary circumstances" set forth in the *Hickey* case, *supra.*

For the aforesaid reasons, the decree of the Circuit Court is affirmed.

Affirmed.

ADESKO, P. J., and JOHNSON, J., concur.