**National Premium Budget Plan Corporation, a Corporation, Plaintiff-Appellant, v. LaSalle Casualty Company, a Corporation, Defendant-Appellee.**

Gen. No. 10,807.

Fourth District.

April 10, 1967.

Fleming, Messman & Lapan, of Bloomington (Roger Lapan, of counsel), for appellant.

Costigan & Wollrab, of Bloomington (William F. Costigan, of counsel), for appellee.

SMITH, J.

Plaintiff, a Michigan corporation, is engaged in financing the payment of premiums on insurance policies where the premium payments are large. It financed the premium on the installment plan on a policy original-

ly issued by and subsequently cancelled by the defendant insurance company. This suit is to recover from the insurance company the balance of the unearned premiums. The trial court found for the defendant and entered a judgment in bar. Plaintiff appeals.

The precipitating cause of this litigation is Transportation Insurance Agency whose manager departed with the funds involved. The issue is whether Transportation was the agent of the plaintiff National Premium or of the defendant LaSalle Casualty Company. Plaintiff contends that Transportation was the agent of the defendant for the issuance and delivery of the insurance policy and that receipt of the premiums by Transportation was receipt by the defendant and thus the defendant is liable for the loss resulting from the defalcations of its agent. Defendant contends that the financing of the premiums was a separate business transaction and that as to such financing Transportation was acting as the agent of the plaintiff and thus plaintiff is saddled with the defalcations of its own agent.

The evidence shows that H. J. Enterprises, Inc., Atlanta, Georgia, insured its truck against loss by collision, fire and theft through Transportation and LaSalle issued its policy TLA-1005 to provide such coverage. To this point, the record shows that Transportation was acting as the agent for LaSalle. Had the insured paid the premiums in cash to Transportation on delivery of the policy and the defalcation then occurred, the loss would clearly rest with LaSalle. However, intervening events, in our judgment, effectively sidetracked this result.

The evidence further shows that Transportation had been recommended to National Premium by another customer of National Premium as a possible user of its major premium budget financing plan. National Premium furnished Transportation a supply of its con-

467

tract forms and they were used by both Transportation and National Premium in this transaction. H. J. Enterprises, Inc. signed the premium installment contract and agreed to make premium payments totalling $12,355.50 in accordance with its terms to the agent named on the reverse side of the contract at the office of National Premium in Michigan. The agent so named was Transportation. Transportation then assigned all its interest in the contract to National Premium and received and endorsed the check representing the proceeds of the loan. LaSalle was not a signatory party to these contract documents.

LaSalle first learned of the premium financing when it received a "notice of premium financed" from National Premium identifying policy No. TLA–1005 listing the insured as H. J. Enterprises, Inc., LaSalle as the insurance carrier, and Bert A. Miller Associates of Chicago, as the issuing agency. This notice stated that "the amount financed will be paid to the issuing agent unless you immediately direct otherwise." LaSalle never did direct otherwise. LaSalle did sign a card and returned it to National Premium acknowledging receipt of the "notice of premium financed" and "our acceptance of the terms as outlined therein." In the contract documents between H. J., Transporation, and National Premium, the latter was directed to "mail confirmation forms" to Bert Miller Associates. A letter directed to Bert Miller Associates from National Premium refers to the addressee as "issuing agent" and to Transportation as "submitting agent" and requests authority to mail the proceeds of the loan to Transportation. The president of National Premium testified they had a telegram from Bert Miller Associates approving such payment and remitted in accordance with that direction.

What was Miller's relationship with LaSalle? As abstracted it is stated thusly: "Bert Miller does claim adjusting work. He does no underwriting or saleswork

for LaSalle Casualty. For our company they adjusted fire, theft and collision losses on automobiles and trucks. We had a payment arrangement with Bert Miller. . . . Bert Miller had no authority from LaSalle to receive or receipt for payments." The contract in evidence between LaSalle and Miller amply supports this statement. This, in our judgment, precludes any thought that Miller was the agent of LaSalle with any authority to bind LaSalle on the payment of the loan proceeds to Transportation. It was Transportation in its contract documents with National Premium that brought Miller into the picture. LaSalle had nothing to do with it.

Both parties rely on Budget Premium Co. v. Inter-Insurance Exchange, 55 Ill App2d 277, 204 NE2d 310. In that case, the financing company was advised by the insurance carrier that it would not be affected by the financing program unless payments were made directly to it. The financing company did not comply with this affirmative direction and recovery by the finance company from the insurance company for unearned premiums was denied. This case is not precise authority for the situation which confronts us. In it the finance company failed to comply with the affirmative directions of the insurance company as to the payment of the loan proceeds. In the case at bar, National Premium failed to comply with its own notice and its own commitment to LaSalle as to the payment of the loan proceeds. Here LaSalle accepted the terms of the "notice of premium financed." That notice provided for the payment of the loan proceeds to the "issuing agent." It designated Bert A. Miller Associates as such "issuing agent," and as the recipient of such proceeds "unless you immediately direct otherwise." No directions otherwise were given by LaSalle. Had payment been made to Miller and defalcation by it occurred, LaSalle would be hard put to escape the consequences of its acceptance. By its acceptance of the notice of premium financed it

would have been estopped to deny the authority of Miller to receive the proceeds. Had the notice specified Transportation, a like result would obtain. Instead National Premium violated its own notice in transmitting the proceeds to Transportation on the purported authority of Miller who was without authority to give it. By its letter to Miller, National Premium recognizes that it was without authority to pay the loan proceeds to Transportation without additional authority. It sought that authority from Miller without ascertaining from LaSalle that Miller had the authority to give it. The telegram from Miller is neither identified in evidence nor accounted for. As abstracted, the president of National Premium testified:

> ". . . No one advised us as to the relationship between LaSalle Casualty and Bert Miller. We did not make other inquiry as to the scope of the agency of Bert Miller as it related to LaSalle.

> "Our only contact with Bert Miller was to write and ask him for directions to pay the money to Transportation in Georgia. We had no specific communication from anyone indicating Bert Miller's authority to direct that payment."

It serves no useful purpose to speculate as to why National Premium wanted Transportation to handle the proceeds of this loan. It is clear from the record that they did. It serves no useful purpose to speculate as to why LaSalle was willing that Miller should receive the proceeds of the loan. The fact is that they did. It is a generally accepted principle that where injury has resulted from the wrongful act of a third person, the damages flowing from such wrongful act must be borne by the party whose conduct made possible the wrongdoer's act, breach of trust, fraud or negligence.

470

And when one of two innocent persons, i. e., persons each guiltless of an intentional moral wrong, must suffer a loss, it must be borne by that one of them who by his conduct has rendered the injury possible or who could have prevented it. 28 Am Jur2d, Estoppel and Waiver, ¶ 62. It is, of course, true that LaSalle could have avoided the defalcation by Transportation by directing the payment of the loan proceeds to it. It is equally true that had National Premium followed its own stipulations to LaSalle and had not breached its notice of premium finance, the defalcation by Transportation would have been avoided. It seems clear to us that Transportation was acting as the agent for La Salle in the delivery of this insurance policy. A separate and distinct transaction then arose which involved the financing of the premiums. In that transaction, Transportation was acting as the agent of National Premium. It was Transportation who directed the payment to Miller. It was Transportation who represented the insured and National Premium in that transaction. In such a situation, it is our judgment that the loss must remain with the agent who was selected by National Premium. Surely LaSalle had the right to rely upon the agreement and commitment of National Premium to pay the loan proceeds to Miller. Surely National Premium had no right to rely upon a directive of Miller as to the payment of these loan proceeds without proper inquiry to ascertain whether or not Miller had the authority to order its payment to Transportation. Having breached its own agreement with LaSalle in the payment of loan proceeds, having relied upon an authorized directive of Miller, and having elected to repose its trust in its own agent, Transportation, it seems clear that the responsibility for the loss here sustained must remain where it now lies, i. e., in the lap of National Premium.

Accordingly, the judgment of the trial court should be and it is hereby affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.