LANDFIELD FINANCE COMPANY, Plaintiff-Appellee, *v.* ALBERT H. FEINER-MAN *et al.*, Defendants-Appellants.

(No. 54683;

First District—January 6, 1972.

Aplon, Bennett, Alexander & Levine, of Chicago, (Harold I. Levine, of counsel,) for appellants.

Fishleder & Adler, of Chicago, (Joseph I. Adler, of counsel,) for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The Landfield Finance Company filed suit against Albert and Lula Feinerman, alleging that they converted items of personal property in which the plaintiff had a prior and perfected security interest. Following a trial without a jury the court found for Landfield and entered judgment in the sum of $4,115.63, from which the defendants appeal. They contend that Landfield failed to prove that a conversion had taken place and that the testimony of the company's president, concerning the market value of the collateral, should have been excluded.

In 1955 the Feinermans entered into an agreement with Arthur and Anna Rossmiller, husband and wife, under which the Rossmillers contracted to purchase The Carroll House, a hotel in Macomb, Illinois, together with all its furnishings. Under a 1959 refinancing arrangement the Feinermans became holders of a chattel mortgage upon the furnishings and equipment of the hotel. In a pleading filed by them the Feinermans indicated that the chattel mortgage had been recorded, but the mortgage was not introduced into evidence and, in any event, it had expired prior to the onset of the events which resulted in the present litigation.

Subsequently, during the latter months of 1966, the Rossmillers applied for a loan from Landfield, and in November 1966 the company's president, George Landfield, traveled to Macomb to arrange the loan. Before making the loan he made a title search on the property, and he thereby confirmed the Rossmillers' statements that they were purchasing the hotel from the Feinermans. The loan was secured by a promissory note from the Rossmillers and a security agreement listing as collateral over 12,000 items of personal property located in The Carroll House. The documents were properly recorded as provided in the Uniform Commercial Code. The Rossmillers gave Landfield an affidavit stating that the Feinermans had no interest in the items of collateral listed in the security agreement. At the trial Feinerman testified that he had a conversation with Landfield at the time of the loan in which he told Landfield that he had a mortgage on the furnishings and the equipment in the hotel. Landfield denied that this conversation took place.

In October 1967 the Rossmillers decided that they would no longer operate The Carroll House, and at a meeting with Mrs. Feinerman on October 26th, they signed an agreement in which they surrendered all their rights to the hotel and consented to give up possession of the premises in 30 days. The Rossmillers moved their belongings to a new location during the weekend of November 11, 1967. Virgil Payne, who supervised the Feinermans' real estate holdings in Macomb, informed Feinerman that the Rossmillers were taking many items of personal property out of the hotel. Upon receiving this information, Feinerman decided to transfer all the movable property in The Carroll House to a building he owned in Macomb. Although the 30 days in which the Rossmillers were entitled to vacate the premises had not expired and although they had not surrendered the keys to The Carroll House, the chattels were removed on November 13th at Payne's direction. On several occasions George Landfield telephoned Payne and demanded possession of the collateral, but to no avail. Thereafter, the Landfield company instituted the present action for conversion against the Feinermans.

The Feinermans assert that the trial court erred in holding that a conversion took place. They admit that their chattel mortgage on the property in dispute had expired at the time Landfield took a security interest in the property. They contend, nevertheless, that Landfield did not prove any action on their part which wrongfully deprived it of possession; that no demand for the goods was made and the items in Landfield's security agreement were fixtures, to which they had a prior right.

■■ The essence of conversion is the wrongful deprivation of property to the owner or the person entitled to possession. (*First Finance Co. v.*

*Ross* (1966), 75 Ill.App.2d 403, 221 N.E.2d 37; *Genslinger v. New Illinois Athletic Club* (1923), 229 Ill.App. 428.) In an action for conversion relief may be had without establishing malice, culpability or conscious wrongdoing. All that is required is the exercise of control by the defendant over the chattel in a manner inconsistent with the plaintiff's right of possession. (*Associates Discount Corp., v. Walker* (1963), 39 Ill.App.2d 148, 188 N.E.2d 54.) However, one who knowingly takes possession of personal property which belongs to another is liable to the person whose property has been appropriated whether or not a demand is made for the return of such property. (*Puerto Rico Industrial Development Co., v. J. H. Miller Mfg. Co.* (1959), 173 F.Supp. 596 D.C. S.D. Ill.) In the present case Landfield made a sufficient demand for the return of the property and, therefore, it need not be determined whether failure to make such a demand would have been fatal to its case.

In his testimony Feinerman identified Payne as his agent and stated that Payne had worked for him for years. He further indicated that the property was taken from The Carroll House because of Payne's suspicions, which were communicated to him, that the Rossmillers were removing items to which they had no right. George Landfield testified that he made several phone calls to Payne demanding the collateral; and, although he did not talk to Feinerman, the instructions Feinerman gave to Payne concerning the property plus his admission of Payne's agency, provide sufficient reason to hold that a demand upon Payne constituted a demand upon Feinerman.

■■ The Feinermans also contend that Landfield's conduct throughout the transaction manifested a lack of good faith. Such a finding was properly for the trial court, as in a non-jury trial the court must determine the credibility of the witnesses. (*Dvorson v. City of Chicago* (1970), 119 Ill.App.2d 357, 256 N.E.2d 59.) No bad faith was found to exist and the Feinermans have not shown that the trial court was in error.

■■ The Feinermans next urge that the property which was removed and upon which Landfield claims a superior right, actually constituted fixtures, and under Ill. Rev. Stat., 1967, ch. 26, par. 9—313, as purchasers of the real estate, their own interest took priority. The once inflexible rule that when personal property is attached by some permanent method to the realty it loses its identity as personalty and becomes part of the realty, has been replaced in Illinois by a more liberal doctrine holding that the property remains personalty where such intent can be gathered from the conduct or the action of the parties. (*In Re Migala's Estate* (1952), 348 Ill.App. 547, 109 N.E.2d 261.) The use of the articles claimed to be fixtures and the purposes for which they were made are also important in determining intent; thus benches in a church as well as the chandeliers have

been held to be personalty. (*Chapman v. Union Mutual Life Insurance Co.* (1879), 4 Ill.App. 29.) Tavern equipment has been specifically held to constitute personalty rather than fixtures. (*Davis Store Fixtures, Inc., v. The Cadillac Club* (1965), 60 Ill.App.2d 106, 207 N.E.2d 711.) In *Davis,* the personal character of the articles was found to remain although the bar had been bolted to the floor and other equipment had to be disconnected from electrical outlets and plumbing lines had to be cut before removal. Another important factor to be considered is whether material injury to the building would occur if the alleged fixtures are removed. *Thuma v. Granada Hotel Corp.* (1933), 269 Ill.App. 484.

Payne removed many of the items from the hotel listed as collateral in Landfield's security agreement—principally hotel and tavern furniture and equipment. No damage was inflicted upon the freehold by such action.

■■ That the Feinermans originally regarded the articles in dispute as items of personalty was also evidenced by their acceptance of a chattel mortgage on the articles from the Rossmillers. The acceptance of a chattel mortgage has been found to express very strong evidence of intent that such items were to remain personalty and not be considered a part of the real estate. (*Thuma v. Granada Hotel, supra.*) The Feinermans have not established that the articles became fixtures, and the trial court did not err in its apparent conclusion that the goods remained personal property on which Landfield had a prior security interest.

■■ The Feinermans final contention is that George Landfield should not have been permitted to testify as to the market value of the property upon the date the loan was made to the Rossmillers in order to prove the value of the same property at the time of the conversion, approximately one year later. However, when Landfield testified as to the property's value the court was aware that the items had been appraised at the time of the loan and could determine the proper measure of damages from all the evidence presented, including the testimony of Mrs. Rossmiller that there was no change in the condition of the collateral between the time of the loan and the date of the conversion and Landfield's testimony that most of the collateral was fully depreciated at the time the loan was made. The trial court was apparently persuaded that Landfield met the requirement for being a qualified witness to testify to the value of personal property in that he had knowledge of such value. (*Adams v. Ford Motor Co.* (1968), 103 Ill.App.2d 356, 243 N.E.2d 843.) It did not err in this determination. Landfield had been making loans secured by collateral for many years (five to seven hundred loans and appraisals) and there was no reason to exclude his testimony merely because the property was not appraised at the precise time of conversion, or because he was the

president of the finance company. Moreover, in awarding damages the trial judge did not rigorously apply Landfield's assessments to the value of the property. Landfield stated that the collateral was worth $6,240.00 at the time of the loan, and the damages awarded amounted to only $4,115.63, the balance owed to the Landfield company by the Rossmillers.

The judgment is affirmed.

Judgment affirmed.

McGLOON, P. J., and McNAMARA, J., concur.