ROBERT G. DOUGLASS, JR., *et al.*, Plaintiffs-Appellants, *v.* EDWARD WONES *et al.*, Defendants-Appellees—(Michael S. Douglas *et al.*, Defendants).

Second District   No. 82—826

Opinion filed December 12, 1983.

Reuben A. Bernick, Howard C. Emmerman, and Mark P. Seidler, all of Rudnick & Wolfe, of Chicago, for appellants.

John L. Hines, Jr., of Schwartz, Cooper, Kolb & Gaynor, David F. Holland, and Eric A. Oesterle and Robert H. Oakley, both of Sonneschein, Carlin, Nath & Rosenthal, all of Chicago, Brydges, Riseborough, Morris, Franke & Miller, and Conzelman, Schultz, Snarski & Mullen, both of Waukegan, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiffs Robert Douglass, Jr. (Douglass), and Robert Douglass Development Company (Douglass Development) appeal from an order of the circuit court of Lake County dismissing with prejudice certain counts of their amended complaint against defendants Edward and Gwendolyn Wones (Woneses), Glenview Guaranty Savings and Loan Association (Glenview), First National Bank of Highland Park (First National), and the Citizens National Bank (Citizens) for failing to state a cause of action.

This action arose from a bad-check scheme which was perpetrated on plaintiffs by defendant Michael S. Douglas, who is unrelated to plaintiff Douglass and who is not a party to this appeal. The following facts were alleged in both the original and amended complaints as facts in common to all the dismissed counts.

On September 18, 1980, Michael Douglas requested and received from plaintiffs three checks drawn by Douglass on the in-State account of Douglass Development and payable to the following payees in the following amounts: R.C.G. Construction $3,100, Michael S.

Douglas $1,000, and J.C.T. Consultants $30,000. In return Douglas gave plaintiff Douglass an out-of-State check totaling $34,100 made payable to Douglass Development, which plaintiff Douglass deposited. These checks are not involved in the instant appeal.

On September 23, 1980, a similar transaction occurred. On that date defendant Douglas again requested and received from plaintiff Douglass the following three checks drawn on Douglass Development's in-State account: $5,000 to Glenview, $6,600 to First National and $54,000 to Citizens. In exchange, Michael Douglas gave Douglass another out-of-State check for $65,600 made payable to Douglass Development, which Douglass deposited.

On each of these two occasions, defendant Douglas represented to plaintiffs that his two checks payable to Douglass Development represented good funds. Plaintiffs issued their checks in reliance upon Douglas' representations. All of the checks drawn by Douglass were paid to the payees named thereon. Defendant Douglas' two checks payable to Douglass Development were returned for insufficient funds.

In 1981 Michael S. Douglas pleaded guilty to criminal charges of theft by deception and deceptive practices based upon the foregoing facts. Plaintiffs' original complaint was based upon various theories of liability. As against the Woneses, the complaint proceeded on theories of conversion, conspiracy to defraud, and unjust enrichment. As against the three payee bank defendants, it proceeded on theories of conversion, rescission of negotiation and unjust enrichment. As against all of these defendants, plaintiffs alleged, in addition to the common facts, that "on information and belief *** [each defendant] knew or had reason to know that Douglass had been fraudulently induced by defendant Michael S. Douglas ***" to draw the checks. The original complaint contained no other facts in support of the allegation of knowledge.

Glenview responded to the original complaint by filing a demand for a bill of particulars, requesting that plaintiffs set forth the facts communicated to Glenview, along with the pertinent dates, from which it knew or had reason to know of the alleged fraudulent inducement. The request was granted by the trial court. However, rather than filing a bill of particulars, plaintiffs filed an amended complaint, realleging the facts in common and also alleging that Glenview, First National, and Citizens had no business or other relationship with plaintiff Douglass and that, "[a]ccordingly, [each defendant] knew or had reason to know that it had no right or authority to obtain payment ***." The amended complaint also alleged that each of the

payee defendants had a duty to inquire whether Douglass had been fraudulently induced to draw the check. In addition, plaintiffs alleged that Citizens and the Woneses knew of the fraud because the check was delivered to them in payment of another bad check of Michael Douglas which had previously been guaranteed by the Woneses and cashed by Citizens.

Defendants involved in this appeal each filed motions to dismiss alleging that the amended complaint consisted of conclusions and not statements of fact as required by section 33 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 33, now codified at Ill. Rev. Stat. 1981, ch. 110, par. 2—603). Additionally, Glenview's motion to dismiss, as well as a motion for summary judgment filed by First National, alleged that Glenview and First National were holders in due course which took the checks free of any defenses against them. The affidavits of two bank officers were attached to First National's motion for summary judgment. In the affidavits the officers alleged that they were aware that Michael Douglas had overdrawn an account, but they had no knowledge of the circumstances surrounding the issuance of the replacement check. The motions to dismiss were all granted. First National's motion for summary judgment was not ruled upon. No motion for leave to amend was filed by plaintiffs.

We first consider whether the trial court erred in dismissing the amended complaint against the Woneses for failure to state causes of action in conversion, conspiracy to defraud, and unjust enrichment. The Woneses maintain that because the complaint was based upon information and belief, it failed to place in issue the ultimate facts required to sustain the causes of action and placed in issue instead plaintiffs' beliefs regarding the Wones' knowledge of the fraudulent inducement. They also argue that the complaint contained a series of legal conclusions which are insufficient to state a cause of action against them.

In determining the sufficiency of the complaint, only those facts well pleaded, and not conclusions, are taken as true. (*Mlade v. Finley* (1983), 112 Ill. App. 3d 914, 918, 445 N.E.2d 1240; *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426-27, 430 N.E.2d 976.) Thus, in considering a motion to dismiss, the court must delete the conclusions of law or fact which are unsupported by allegations of specific facts on which the conclusions rest. (*Knox.*) If, after these deletions, there are not sufficient allegations of fact which state a cause of action against the defendant, the motion must be granted regardless of how many conclusions the count may contain and regardless of whether they inform the defendant in a general way of the nature of the claim

against him. (88 Ill. 2d 407, 426, 430 N.E.2d 976.) A complaint should not be dismissed unless it clearly appears that no set of facts can be proved which will justify recovery. (*City of North Chicago v. North Chicago News, Inc.* (1982), 106 Ill. App. 3d 587, 435 N.E.2d 887.) However, when the trial court strikes a complaint and the plaintiff does not ask for leave to amend, the lawsuit stands or falls upon the contents of the stricken pleading. *Mlade; Krachock v. Department of Revenue* (1949), 403 Ill. 148, 153, 85 N.E.2d 682.

Count I of plaintiffs' amended complaint against the Woneses proceeded upon the theory of conversion and alleged, in addition to the common facts, that Michael Douglas delivered to the Woneses the check made payable to Citizens; that the Woneses delivered the check to Citizens with instructions to credit the proceeds to an indebtedness owed to Citizens by the Woneses; that the Wones' indebtedness arose out of their guarantee of payment of an earlier check of Douglas' which was cashed by Citizens but was returned unpaid because of insufficient funds; that "on information and belief," Douglas obtained the Wones' guarantee by means of untrue and fraudulent misrepresentations that the earlier check was covered by sufficient funds; that the Woneses became aware of Douglas' misrepresentations when the earlier check was returned unpaid; that "upon information and belief," the Woneses knew or had reason to know that plaintiff Douglass had been fraudulently induced by Douglas to draw the check and therefore that their instructions to Citizens were wrongful and unauthorized; that, alternatively, they had a duty to inquire whether Douglass had been fraudulently induced; that the Woneses converted the check to their own use; that they refused to return the proceeds despite plaintiffs' demand; and, that plaintiffs were damaged in the amount of $54,000.

To state a cause of action in conversion, a plaintiff must allege: an unauthorized and wrongful assumption of control; dominion or ownership by a person over the personalty of another; his right in the property; his right to the immediate possession of the property, absolute and unconditional; and, a demand for possession of the property. (*Farns Associates, Inc. v. Sternback* (1979), 77 Ill. App. 3d 249, 252, 395 N.E.2d 1103.) Relief in an action for conversion may be had without establishing malice, culpability or conscious wrongdoing. (*Landfield Finance Co. v. Feinerman* (1972), 3 Ill. App. 3d 487, 490, 279 N.E.2d 30.) Thus, knowledge is not an element of the cause of action. (3 Ill. App. 3d 487, 490, 279 N.E.2d 30.) It is generally held that one cannot purchase and acquire a good title to stolen property, and where personal property is wrongfully taken from the owner, the

owner has the right to retake possession whenever and wherever the property may be found. (*Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.* (1971), 2 Ill. App. 3d 978, 276 N.E.2d 89; *Harris v. Lipman* (1918), 212 Ill. App. 499; *Baldwin v. Smith* (1908), 143 Ill. App. 56.) An exception to this general rule exists where the property taken is a negotiable instrument. Under these circumstances, if the instrument is taken by a holder in due course of business, then the holder takes the instrument free of all claims against it. (Ill. Rev. Stat. 1979, ch. 26, par. 3—305(1).) The language "all claims" under the Uniform Commercial Code includes not only claims of legal title, but also all liens, equities or claims of any other kind. (Ill. Ann. Stat., ch. 26, par. 3—305, Uniform Commercial Code Comment, at 183 (Smith-Hurd 1963).) Unless one has the rights of a holder in due course he takes the instrument subject to all valid claims and defenses to it on the part of any party. Ill. Rev. Stat. 1979, ch. 26, par. 3—306(a).

■ In light of the foregoing authorities, we believe plaintiffs' amended complaint adequately states a cause of action in conversion against the Woneses. The complaint alleges an unauthorized and wrongful assumption of control by the Woneses which was demonstrated by their taking of a check from defendant Douglas which was fraudulently obtained. The Wones' dominion over the check and its proceeds was pleaded and supported by the factual allegation that the Woneses directed Citizens to credit the proceeds to the Wones' indebtedness to Citizens. The pleadings also contained the allegation that plaintiff Douglass had an immediate right to the property based upon the fact that the property was fraudulently obtained from him. The perpetrator of the fraud was convicted of deceptive practices and theft by deception on the basis of his fraudulent inducement. Further, the drawer is the owner of a check until it is received by the payee, so that as between plaintiff and the Woneses, plaintiff was entitled to possession. (*First National Bank v. Pease* (1897), 168 Ill. 40, 42, 48 N.E. 160.) Finally, plaintiffs alleged that a demand was made for the proceeds, which demand was refused by the Woneses. These facts, if proved, are sufficient to establish a conversion of the check and its proceeds by the Woneses.

The Woneses do not claim, nor could they claim, that they are entitled to the protections afforded to holders in due course under the Uniform Commercial Code. (Ill. Rev. Stat. 1979, ch. 26, par. 3—305.) A "holder" under the Code is defined as one who has possession of an instrument issued or indorsed to him or to his order or to bearer or in blank. (Ill. Rev. Stat. 1979, ch. 26, par. 1—201(20).) Here, the check which was alleged to have been given to the Woneses by defendant

Douglas was payable to the order of Citizens and not the Woneses. Thus, the Woneses took the check at their risk subject to the plaintiffs' claims against it. Ill. Rev. Stat. 1979, ch. 26, par. 3—306.

Similarly, the Wones' argument that the complaint is insufficient to place in issue the ultimate facts necessary to establish a conversion is without merit. The argument is based upon the legal principle that an allegation based "upon information and belief" puts in issue only the pleader's belief and not the ultimate facts of the case. (See *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 588, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *Whitley v. Frazier* (1961), 21 Ill. 2d 292, 294, 171 N.E.2d 644; *Rezek v. Fishman* (1950), 340 Ill. App. 638, 92 N.E.2d 359 (abstract); *People v. Blair* (1898), 82 Ill. App. 570, 583; but see *Stanley Magic-Door, Inc. v. City of Chicago* (1979), 74 Ill. App. 3d 595, 598, 393 N.E.2d 535, holding that a *verified* complaint is not insufficient if it is based merely on information and belief.) Without deciding this issue, we find it irrelevant as it relates to plaintiffs' conversion count. The only allegations in count I which were based "upon information and belief" were those tending to establish the Wones' knowledge of Douglas' fraudulent misrepresentations to plaintiffs. Since knowledge is not an element of conversion, the allegations based "upon information and belief" in the conversion count were unnecessary to establish the cause of action. (*Landfield Finance Co. v. Feinerman* (1972), 3 Ill. App. 3d 487, 490, 279 N.E.2d 30.) Because we think plaintiffs' complaint adequately states a cause of action in conversion against the Woneses, we reverse and remand this portion of the court's order.

■ We agree, however, with the trial court's conclusion that count II of plaintiffs' amended complaint, alleging a conspiracy to defraud, was insufficient to state a cause of action. Count II alleged, in addition to the facts in common: that Michael Douglas delivered the check payable to Citizens to the Woneses and they thereupon delivered it to Citizens with instructions to credit the proceeds to their indebtedness; that "on information and belief," the Woneses agreed and conspired with Douglas fraudulently to induce Douglass to draw the check and to use the proceeds to discharge the Wones' indebtedness to Citizens; that in furtherance of this agreement the Woneses delivered the check to Citizens; and, that the Wones' actions were intended to injure the plaintiffs, thereby justifying an award of punitive damages.

To state a cause of action for conspiracy, plaintiffs must allege the combination of two or more persons who act in concert to accomplish some criminal or unlawful purpose or a lawful purpose by criminal or

unlawful means. (*Heller v. Goss* (1980), 80 Ill. App. 3d 716, 721, 400 N.E.2d 70.) An allegation of fraud, conspiracy or collusion must show the facts upon which the allegation is based, and not mere conclusions of the pleader. *In re Estate of Hansen* (1969), 109 Ill. App. 2d 283, 294, 248 N.E.2d 709.

In the present case, the only allegation of an agreement or conspiracy is contained in an unverified complaint based upon information and belief. Such a bare assertion, without more, is insufficient to place in issue the existence of an agreement between Douglas and the Woneses. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 588, 272 N.E.2d 497; *Whitley v. Frazier* (1961), 21 Ill. 2d 292, 294, 171 N.E.2d 644; *cf. Stanley Magic-Door, Inc. v. City of Chicago* (1979), 74 Ill. App. 3d 595, 598, 393 N.E.2d 535.) Eliminating this allegation, there are no facts alleged which would tend to indicate any knowledge or agreement on the part of the Woneses that plaintiffs' check was fraudulently obtained. The fact that the check was taken to satisfy an indebtedness arising from the Wones' previous guarantee of defendant Douglas' check is insufficient to establish the Wones' knowledge of the fraud. (See Ill. Rev. Stat. 1979, ch. 26, par. 3—304(4)(f).) We therefore conclude that count II was properly dismissed for failing to state a cause of action in conspiracy to defraud.

Count III of the amended complaint against the Woneses alleged unjust enrichment and essentially realleged those facts contained in count I including an allegation that the Woneses were aware that a fraud had been perpetrated upon them when the earlier check was returned unpaid. In addition it alleged that by discharging the Wones' indebtedness to Citizens, the payment of the check conferred a benefit of $54,000 upon the Woneses for which the Woneses gave no consideration or other value. The allegation of the Wones' knowledge of the fraudulent inducement was again based upon information and belief.

In an action in equity for unjust enrichment, a complaint on which recovery may be based need only allege that there be unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience. *Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10, 12, 382 N.E.2d 309.

Here, plaintiffs' amended complaint alleged sufficient facts to state an action for unjust enrichment. It alleged a fraudulent inducement by Michael Douglas to issue the check, a delivery of the check to the Woneses, the application of the proceeds of the check to the Wones' indebtedness to Citizens, and the lack of any value or consideration given by the Woneses to plaintiffs in exchange for the money.

It is clear that as guarantors of defendant Douglas' previous check, the Wones were primarily liable to Citizens and that the subsequent credit reduced their liability, thereby conferring a benefit upon them. (Ill. Rev. Stat. 1979, ch. 26, par. 3—416.) The Woneses do not claim to have any legal right to the proceeds of the check, but only argue that where one of two innocent persons must suffer a loss, it must be borne by the one who could have prevented it. (*National Premium Budget Plan Corp. v. LaSalle Casualty Co.* (1967), 81 Ill. App. 2d 466, 225 N.E.2d 400.) However, the question of whether the Woneses and the plaintiffs were equally innocent parties is a question of fact which cannot be resolved on the basis of the pleadings here.

Next, we consider whether counts XII through XX of plaintiffs' amended complaint, alleging causes of action in conversion, rescission of negotiation, and unjust enrichment against Citizens, First National and Glenview, were properly dismissed for failing to state causes of action. In all of these counts, plaintiffs alleged "on information and belief" that defendants "knew or had reason to know" of Douglas' fraudulent inducement because plaintiffs neither had a business or other relationship with them nor owed them money. In addition, as against Citizens, the complaint also alleged it had knowledge or notice because the check payable to it was in payment of an indebtedness created by an earlier bad check of Douglas.

■ Initially, we consider the question whether these payee defendants are entitled to the protection afforded to holders in due course under the Uniform Commercial Code. (Ill. Rev. Stat. 1979, ch. 26, par. 3—305.) Under the Code, a "holder in due course" is a holder who takes an instrument for value in good faith, and without notice of any defense against or claim to it on the part of any person. (Ill. Rev. Stat. 1979, ch. 26, par. 3—302(1).) A "holder" is a person who has possession of an instrument payable to his order or to bearer in blank. (Ill. Rev. Stat. 1979, ch. 26, par. 1—201(20).) It is clear in the present case that the payee banks were "holders" of the checks in question. In Illinois it has been held that a payee who accepts a check from one who is indebted to him but who is not the drawer, without knowledge of any fraud which the debtor may have practiced to induce the drawer to write the check in favor of the payee is a holder in due course who takes the instrument free from any defenses claimed by the drawer. (Ill. Ann. Stat., ch. 26, par. 3—302(2), Illinois Code Comment, at 140 (Smith-Hurd 1963); *Drumm Construction Co. v. Forbes* (1922), 305 Ill. 303, 137 N.E. 225.) However, a special situation exists where the payee is a bank who accepts a check from one who is not the drawer and that person requests that the bank credit his personal

account with the proceeds. In this situation, the bank is held to a higher standard than is the individual in a private transaction, and notice is deemed to have been given by the terms of the instrument itself. (*Milano v. Sheridan Trust & Savings Bank* (1926), 242 Ill. App. 362, 368.) Explaining the distinction between individuals and banks under these circumstances, the court in *Milano* stated:

"There is a marked difference between the obligations of a banking institution receiving funds and an individual. The latter does not ordinarily receive checks payable to his order from persons not indebted to him; he is not the custodian of funds in which he has no interest; nor is he a depositary for such members of the public as wish to avail themselves of his services. On the other hand, a bank is all of these. The public is invited to use its conveniences as places of deposit; it holds itself out as trustworthy for such purposes; when it is named as the payee in a check by a party not indebted to it, it will be presumed that it accepts the same subject to the directions of the drawer and not to the directions of a stranger to the paper who happens to present it." (242 Ill. App. 362, 369. Accord, *People ex rel. Nelson v. Peoples Bank & Trust Co.* (1933), 271 Ill. App. 41.)

Thus, under these circumstances the bank is required to hold the proceeds of the instrument subject to the order of the drawer, and not the presenter, and it generally cannot be a holder in due course as against the drawer if it has permitted the presenter to withdraw or otherwise use the proceeds of the check without taking precautions to determine the authority of the person to receive them. *People ex rel. Nelson; Milano;* Ill. Ann. Stat., ch. 26, par. 3—302(2), Illinois Code Comment, at 140-41 (Smith-Hurd 1963).

■ Glenview argues that an inquiry here would have been fruitless since plaintiffs intended Douglas to receive the proceeds and were not aware at the time of negotiation of any defense which they had upon the instrument. While this may be true, the pleadings do not indicate either the point at which plaintiffs became aware of Douglas' fraud or the time when the checks were cashed. Thus, we are unable to conclude with any degree of certainty that an inquiry by the payee banks here would have been fruitless. It is conceivable that had the banks contacted plaintiffs, plaintiffs would have been advised of Douglas' financial position and could have averted this controversy. Further, we do not consider the results of the inquiry as being determinative of whether the duty to inquire exists in the first instance. The duty in our opinion arises from the face of the instrument itself

and not from the information which would be obtained from the drawer. We therefore conclude that the payee banks here are not entitled to assert holder in due course status as a defense to plaintiffs' claims. They were merely holders of the instruments and as such took subject to all claims against them. Ill. Rev. Stat. 1979, ch. 26, pars. 3—306, 1—201.

Turning to the complaint itself, as against each of these defendants, plaintiffs alleged, in addition to the common counts, that "on information and belief" they knew or had reason to know of the fraudulent inducement by Douglas because plaintiffs had no business or other relationship with defendants and owed them no money; that despite this knowledge or notice and without inquiry each endorsed and obtained payment of the checks, thereby converting them to their own use; that each refused to restore the proceeds to plaintiffs; and, that plaintiffs have been damaged in the face amount of the checks.

■ As previously set forth, an essential element of conversion is an immediate right of possession as against the defendant. (*Farns Associates, Inc. v. Sternback* (1979), 77 Ill. App. 3d 249, 252, 395 N.E.2d 1103.) First National and Glenview argue that a cause of action in conversion cannot be maintained against them because as holders they were entitled to possession of the instruments. We agree. The Comments to section 3—419 of the Uniform Commercial Code state that "[a] negotiable instrument is the property of the holder." (Ill. Ann. Stat., ch. 26, par. 3—419, Uniform Commercial Code Comment 2, at 328 (Smith-Hurd 1963).) Therefore, as holders of the checks, the defendant banks became the owners of the instruments in question and as between the drawer plaintiffs and the payee banks the banks had the immediate right to possession of the instruments at the time of negotiation. Further, section 3—301 of the Code provides that a holder of an instrument "may transfer or negotiate it *** or enforce payment in his name." (Ill. Rev. Stat. 1979, ch. 26, par. 3—301.) We therefore conclude that an action in conversion cannot lie against the payee banks.

■ However, we believe sufficient facts were alleged in the amended complaint to establish causes of action against the defendant banks in rescission of negotiation and unjust enrichment. Under section 3—306 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 3—306), a holder of an instrument who is not a holder in due course takes the instrument subject to all legal and equitable claims to it on the part of any person, including rescission of negotiation. The elements of an equitable claim for rescission on the basis of fraud and misrepresentation are: a representation in the form of a statement of

material fact, made for the purpose of inducing the other party to act; the statement is false and known by the party making it to be false, or not actually believed by him to be true; the party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true, must act thereon to his damage, and in so acting must rely upon the truth of the statement. *Bank Computer Network Corp. v. Continental Illinois National Bank & Trust Co.* (1982), 110 Ill. App. 3d 492, 501, 442 N.E.2d 586; *Roda v. Berko* (1948), 401 Ill. 335, 339, 81 N.E.2d 912.

On the basis of the foregoing authorities, plaintiffs' complaint states sufficient facts to allege a right to rescission of negotiation on the basis of fraud. Plaintiffs alleged that defendant Douglas made a false representation to plaintiff Douglass, knowing it to be false, for the purpose of inducing plaintiffs to issue checks to the payee banks. The complaint stated that plaintiffs relied upon the misrepresentation in issuing said checks. While the complaint does not allege that plaintiffs' reliance was reasonable, no objection on this basis was made. In any event, the reasonableness of plaintiffs' reliance is a question of fact for the trier of fact. See *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599.

■ In reaching this conclusion, we do not consider First National's claim that plaintiffs' action for rescission of negotiation is barred by the doctrine of *laches*. This question was not raised in the trial court and is therefore waived on appeal. (*National Acceptance Co. of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 706, 418 N.E.2d 1114.) First National also argues that because plaintiff Douglass did not personally negotiate the check, no negotiation occurred which can be rescinded by him. This argument is without merit. Section 3—202(1) of the Uniform Commercial Code defines "negotiation" when the instrument is payable to order as occurring when it is delivered with any necessary endorsement. (Ill. Rev. Stat. 1979, ch. 26, par. 3—202(1).) Under this definition, a drawer need not personally deliver the instrument to the payee in order for it to be "negotiated."

To state a claim for unjust enrichment, the complaint must allege that there be unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience. *Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10, 12, 382 N.E.2d 309.

■ Plaintiffs' amended complaint alleged that defendants gave no value to plaintiffs for the checks, but received the benefits of the proceeds. Plaintiffs also argue on appeal that defendants' retention of

the proceeds was unjust in light of their notice or knowledge of a claim and their lack of inquiry into it. Inasmuch as the defendant banks took the checks in payment of antecedent debts of defendant Douglas, they were taken "for value." (Ill. Rev. Stat. 1979, ch. 26, par. 3—303(b).) However, as previously stated, the checks were taken with knowledge that there could be a claim against them. Under these circumstances, the application of the proceeds to the antecedent debt, without some precautions being taken, amounts to negligence on the part of the payee banks. (*Milano v. Sheridan Trust & Savings Bank* (1926), 242 Ill. App. 362.) We believe that under these circumstances it is a question of fact whether the proceeds were unjustly retained against the fundamental principles of equity. We therefore conclude that the amended complaint adequately stated a cause of action in unjust enrichment against the payee banks. Citizens argues that it was not unjustly enriched because it is in the same position as it was prior to cashing Douglas' original check which gave rise to his indebtedness. However, this argument is spurious in light of the fact that it was the proceeds of plaintiffs' check which enabled Citizens to be in the same position.

Finally, First National urges us to grant its motion for summary judgment based upon its alleged status as a holder in due course. Because we have determined that First National is not entitled to assert this status as a defense to plaintiffs' claims, we do not reach the question whether the motion should be considered by us although not ruled upon at trial.

For the foregoing reasons we reverse the order of the circuit court of Lake County dismissing the conversion and unjust enrichment counts of the amended complaint against defendants Woneses. We also reverse the court's dismissal of the counts alleging rescission of negotiation and unjust enrichment against the payee defendant banks. In all other respects, the order is affirmed. The cause is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

LINDBERG and REINHARD, JJ., concur.