**TERRE HAUTE INDUSTRIES, INC., Plaintiff,**

v.

**Henry A. PAWLIK and First National Bank in Dolton, Defendants.**

**No. 88 C 200.**

United States District Court, N.D. Illinois, E.D.

May 3, 1991.

Victor M. Pilolla, Oak Park, Ill., for plaintiff.

John A. Hiskes, Buikema, Hiskes, Dillner, O'Donnell & Marovich Ltd., Joseph A. Gyarmathy, Nagel & Gyarmathy, South Holland, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court are the cross motions of plaintiff Terre Haute Industries ("Terre Haute") and defendant First National Bank in Dolton ("National"). National moves for summary judgment on Count IV and V of Terre Haute's Second Amended Complaint. Terre Haute moves for summary judgment on Count IV only. For the reasons discussed below, summary judgment is granted in favor of National on Count V. Summary judgment is denied as to both parties on Count IV.

### FACTS

Defendant Henry Pawlik ("Pawlik") was employed by Utirsa Corporation (plaintiff's predecessor in interest) as a bookkeeper and accountant. Plaintiff alleges that in December of 1981, Pawlik told Utirsa that the corporation owed $18,338 in federal income taxes. Utirsa prepared a check in this amount drawn on its corporate account at Central National Bank, payable to National. According to plaintiff, Utirsa gave the check to Pawlik for the purpose of establishing a tax escrow account at National.[1] Utirsa itself had no existing ac-

---

1. Pawlik, however, testified at his deposition that the checks given to him by Utirsa were bonus payments made pursuant to a fee arrangement in which he received ten percent of the money which he saved Utirsa on its taxes. Although National raises this point in opposition to plaintiff's motion for summary judgment, it does not rely on this testimony in its own motion for summary judgment. In its motion, National assumes, *arguendo*, the facts alleged by plaintiffs concerning the purpose of the checks.

count at National and had no banking relationship there. Rather than setting up a tax escrow account on behalf of Utirsa, Pawlik deposited the check into his own existing account at National and subsequently spent the money for his own purposes.

In September of 1982, Pawlik allegedly told Utirsa that the company owed $25,000 in federal taxes. Utirsa made out another check, payable to National, and gave it to Pawlik, who again deposited the money into his own account at National and later used the money for himself.

In January of 1983, Pawlik allegedly represented to Utirsa that it needed to write a check for $44,500 to cover its latest federal tax liability. Utirsa prepared a check drawn on its account at The Bank of Charleston, made payable to:

First National Bank of Dolton
1510 Chicago Road
Dolton, Illinois 60409

Like the previous two checks, this check bore no legend whatsoever as to its purpose and contained no restrictive endorsement as to how it was to be applied. The check was neither signed by nor endorsed by Pawlik and Pawlik's name appeared nowhere on either side of the check. As he had done with the previous checks, Pawlik deposited this check into his own account at National and spent the funds for his own purposes.

Ultimately, plaintiff discovered that it in fact had negative tax liability for tax years in which Pawlik allegedly represented that taxes were due and owing.[2] On January 11, 1988, Terre Haute filed the instant diversity action on behalf of Utirsa, which had been liquidated sometime after the events at issue. In its Second Amended Complaint, Terre Haute alleges claims against Pawlik and National for conversion of the funds covered by these checks. In Count IV of the Second Amended Complaint, plaintiff alleges that National unlawfully converted the check for $44,500 "by accepting it for deposit into Pawlik's personal account without first determining

Pawlik's authority with regard to said check." Terre Haute has moved for summary judgment on Count IV and National has cross-moved for summary judgment on the same issue.

National also moves for summary judgment on Count V, in which plaintiff alleges conversion against National with regard to the $25,000 check drawn in September 1982.

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the court must view the non-moving party's evidence as true and draw all justifiable inferences in that party's favor. *Id.* at 255, 106 S.Ct. at 2513–14; *see Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir.1990). In ruling on a summary judgment motion, a judge should not weigh the evidence, make determinations of credibility, or draw even "legitimate inferences" in favor of the moving party. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513. Further, the court is not permitted to speculate.

■ Moreover, in this district, a motion for summary judgment must be accompanied by a statement of material facts which complies with the requirements of Rule 12(m) of the General Rules of the United States District Court for the Northern Dis-

2. Attached to its motion papers, National submits copies of Utirsa's 1981 and 1982 tax returns, each of which indicate a negative taxable income for these years.

trict of Illinois ("Local Rules"). Local Rule 12(m) states, in relevant part:

> With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, *in addition to* the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.... That statement shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion. [Emphasis added.]

Local Rule 12(m). Similarly, a party opposing a motion for summary judgment must file "a concise response to the movant's statement" which contains:

> (1) a response to each numbered paragraph in the moving party's statement, including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (2) a statement ... of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

Local Rule 12(n). *See Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1103 (7th Cir.1990). Local Rule 12 requires specificity and documentation for all assertions made in statements of fact filed pursuant to it. *Id.* at 1103. The rigor of this rule is intended to facilitate summary judgment rulings by isolating and disposing of factually unsupported claims and defenses. Accordingly, both the moving and non-moving parties are required to support their position with *evidence* as opposed to mere allegations. If the movant fails to establish an essential element of its summary judgment motion with a properly supported Rule 12 statement, summary judgment must be denied. *See* Local Rule 12(m). Similarly, if the non-moving party fails to rebut a movant's properly supported 12(m) statement with a properly supported response complying with Local Rule 12(n), the movant's statement of material fact on that issue will be deemed admitted. *See Tapy,* 896 F.2d at 1103.

■ For Terre Haute to prevail on its motion, the undisputed facts, as presented in a properly supported 12(m) statement must support all of the essential elements for a conversion cause of action. These elements are: plaintiff's right to the property in question; an unauthorized and wrongful assumption of control, dominion, or ownership by another over the plaintiff's property; plaintiff's absolute and unconditional right to immediate possession of the property; plaintiff's demand for possession of the property. *Douglass v. Wones,* 120 Ill.App.3d 36, 41, 76 Ill.Dec. 114, 119, 458 N.E.2d 514, 519 (2d Dist.1983).

■ Inexplicably, Terre Haute has utterly failed to support its motion in compliance with Local Rule 12, even though the court had dismissed its previously filed motion for summary judgment for this very reason. *See* Order of December 5, 1990.[3] More importantly, Terre Haute has provided no *evidence* whatsoever in support of its allegations concerning the purpose for the

---

**3.** In its December 5, 1990 order, the court noted that if the parties had clearly agreed to all material fact issues, the court would not apply Local Rule 12 rigidly and deny the motions on procedural grounds alone. The court also noted that the parties appeared to disagree on the reason why Utirsa gave the disputed checks to Pawlik. Terre Haute claims that the checks were given to Pawlik to set up a company tax escrow account. National claims there is a genuine issue as to whether Pawlik was given these checks as compensation. The parties' failure to abide by Rule 12 has made it difficult for the court to determine whether indeed this fact issue is genuinely contested.

checks.[4] In fact, plaintiff's submissions on its summary judgment motion fail to reflect even unverified statements of fact concerning the purpose of the checks. It is axiomatic that to prevail on a motion for summary judgment, a movant must present undisputed facts which support all material elements of its claim. Plaintiff appears to have overlooked this axiom. Having failed to establish the purpose for which Utirsa wrote the checks, plaintiff fails to meet any of these elements. Consequently, plaintiff's motion for summary judgment on Count IV must be denied.

Ironically, National moves for summary judgment on Count IV on completely different grounds. National argues that it is entitled to summary judgment because: 1) the Uniform Fiduciaries Act insulates National from liability for common law conversion; 2) Pawlik's fraud on the plaintiff supersedes any breach of duty or wrongdoing on the part of National as a proximate cause of harm to the plaintiff; 3) plaintiff's own negligence in allowing itself to be defrauded precludes its recovery from National; and 4) Terre Haute cannot satisfy all of the essential elements of conversion because National, as payee and holder of the check, had "the right to immediate possession" of the instrument at the time of negotiation.[5] Because National's motion argues only issues which are supported by the undisputed facts as set forth in its Rule 12 statement, the court addresses the merits of its arguments.

■ The court first addresses National's argument that the Uniform Fiduciaries Act insulates it from liability. As this court stated in its order denying National's mo-

tion to dismiss, the Uniform Fiduciaries Act applies only "to situations where the person depositing the check is *known by the bank to be a fiduciary.*" Order of August 5, 1988 (emphasis in the original).

The two cases cited by National in support of its position, *Johnson v. Citizens Nat'l Bank of Decatur,* 30 Ill.App.3d 1066, 334 N.E.2d 295 (4th Dist.1975) and *St. Stephen's Church v. Seaway Nat'l Bank,* 38 Ill.App.3d 1021, 350 N.E.2d 128 (1st Dist. 1976), are both clearly distinguishable from the present case. In *Johnson,* the parties stipulated that the employee who converted the company checks (Mr. Wilhem) was in fact a fiduciary. Moreover, Mr. Wilhem was the signatory on the disputed checks and the bank which deposited the disputed funds into Mr. Wilhem's account *knew* that he was a fiduciary. *See Johnson,* 30 Ill. App.3d at 1070, 334 N.E.2d at 298 ("The drafts indicated, on their face, that Mr. Wilhem was authorized to sign them").[6] The Appellate Court in *Johnson* specifically held that: "The purpose of the [Uniform Fiduciaries] Act is to cover situations which arise when one person honestly deals with another *knowing* him to be a fiduciary" (emphasis added). 30 Ill.App.3d at 1069–70, 334 N.E.2d at 298. In the present case, unlike *Johnson,* there is nothing on the record to indicate that National knew Pawlik was a fiduciary of Utirsa (assuming that he in fact was a "fiduciary" as contemplated by the Act).

■ Similarly, in *St. Stephen's* as in *Johnson,* defendant bank clearly knew that the depositor of the checks in question (Louis E. Ferguson, the treasurer of the drawer of the checks—St. Stephen's Evan-

---

4. The court notes that the fact that the checks were not made out to Pawlik might raise a reasonable inference that they were not intended for Pawlik's personal use. However, the court is not at liberty to draw even reasonable inferences in favor of the movant on a summary judgment motion. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513–14. Further, plaintiff has failed to file any affidavits or other Rule 56(e) evidence in support of its allegation that the checks were intended for deposit into a tax escrow account.

5. Although National has filed a 12(m) statement of facts, this statement does not address the

purpose for which the checks were written. Rather, National asserts only that the checks were drafted by Utirsa without any legend concerning their purpose and were deposited into Pawlik's account at National. Indeed, National's arguments on summary judgment appear to assume, *arguendo,* that Pawlik in fact defrauded Utirsa.

6. Wilhem signed the checks as agent for the drawer corporation. Below his signature was printed "an authorized signature." *Johnson,* 30 Ill.App.3d at 1068, 334 N.E.2d at 297. By contrast, Pawlik's signature appears nowhere on any of the disputed checks.

gelical Lutheran Church) was a fiduciary of the drawer. In fact, the church had on file at the bank a resolution which specifically authorized the bank to treat Ferguson as its agent for all purposes.

The bank resolution authorized the officers, agents and employees of the church to indorse for deposit or negotiation checks belonging to or coming into the possession of the church and Ferguson alone, to sign "checks * * * including orders or directions in informal or letter form: against funds standing to the credit of the church. It also authorized the bank to honor checks drawn to Ferguson's individual order without further inquiry or regard to his authority or the use of the proceeds of such checks.

*St. Stephen's*, 38 Ill.App.3d at 1023, 350 N.E.2d at 129. The holding in *St. Stephen's* specifically relied on the bank resolution in determining that the Uniform Fiduciaries Act precluded St. Stephen's from recovering from the bank. "The threshold issue is whether the bank incurred liability to the church in cashing the checks. We look to the bank resolution executed by the church and [the Uniform Fiduciaries Act] for the answer." *Id.*

In the present case, unlike *Johnson* or *St. Stephen's*, there is no evidence indicating that National knew that Pawlik was a fiduciary. In other similar cases, courts have held the depositing bank liable to the drawer of disputed checks. *See Arvada Hardwood Floor Co. v. James*, 638 P.2d 828 (Colo.App.1981) (Depositing bank not insulated from liability under the Uniform Fiduciaries Act for depositing corporate checks made out to the bank into account of part-time accountant); *See generally* Annotation, *Liability of Bank for Diversion to Benefit of Presenter or Third Party of Check Drawn to Bank's Order by Drawer Not Indebted to Bank*, 69 A.L.R.4th 767 (1989). For these reasons, National has failed to establish that the Uniform Fiduciaries Act insulates it from liability in the present case.

■ National next argues that even assuming that it breached its duty to the plaintiff to ensure that the check proceeds

were properly applied, "[t]he proximate or most direct cause of Plaintiff's loss was not the bank's conversion but rather Pawlik's fraud in having the check drawn in the first instance." National's Memorandum in Support of Summary Judgment, p. 7. National cites no case law in support of this apparently untenable position. That Pawlik may be liable to the plaintiff does not absolve National of potential liability. It is well established that where a check is drawn to the order of a bank and the drawer owes no debt to the payee bank, the bank has a duty to see that the proceeds of the check are not misapplied. *See Allis Chalmers Leasing Services Corp. v. Byron Center State Bank*, 129 Mich.App. 602, 341 N.W.2d 837 (Mich.Ct.App.1983). In *Allis Chalmers*, the court stated that:

"Where a check is drawn to the order of a bank to which the drawer is not indebted, the bank is authorized to pay the proceeds only to persons specified by the drawer; it takes the risk in treating such a check as payable to bearer and is placed on inquiry as to the authority of the drawer's agent to receive payment." (Footnotes omitted.) 9 CJS, Banks and Banking, § 340, p. 683.

341 N.W.2d at 839.

■ National also argues that "Plaintiff's own negligence was the underlying cause for its loss and, in any event, clearly outweighed any breach of duty which this Defendant may have owed to Plaintiff." National Memorandum, pp. 8–9. National appears to be under the mistaken impression that any fault of any other party bars it from liability. National again cites no authority in support of its chimerical position. Suffice it to say that National's argument finds no basis in Illinois tort law.

■ National next argues that plaintiff cannot meet the "right to immediate possession" prong of the conversion cause of action. It argues that because the disputed check was made payable to National, it was a "holder" and owner of the check and that it—and not plaintiff—had the immediate right to possession of the instrument at the time of negotiation. It cites *Douglass v. Wones*, 120 Ill.App.3d 36, 76

Ill.Dec. 114, 458 N.E.2d 514 (2d Dist.1983), in support of this proposition. However, *Wones* is clearly distinguishable from the present case. In *Wones,* the presenter used fraudulently obtained checks to pay off pre-existing debts which he owed to the payee banks. Thus, the *Wones* court held that: "Inasmuch as the defendant banks took the checks in payment of antecedent debts of defendant Douglas, they were taken 'for value.'" 120 Ill.App.3d at 49, 76 Ill.Dec. at 124, 458 N.E.2d at 524. Unlike the defendant banks in *Wones,* National gave nothing for the check, it simply collected it and misapplied the proceeds. Clearly, National was not a holder in due course for value and had no right or claim to the proceeds of checks. *See Robbins v. Passaic Nat'l Bank,* 160 A. 418 (N.J.1932). Thus, National's argument that it had a right to immediate possession of the check which superseded that of the plaintiff is groundless.

Finally, National moves for summary judgment on Count V of Plaintiff's Second Amended Complaint on statute of limitations grounds. In support of its motion, National asserts that plaintiff did not commence its action on Count V within the five year limitations period set by Illinois statute. Plaintiff does not raise any genuine issue of material fact which would preclude summary judgment in favor of National on Count V. In fact, plaintiff apparently declines even to address National's motion for summary judgment on Count V in his only responsive pleading which is styled "Reply to Defendant's Cross Motion for Summary Judgment" ("Plaintiff's Response"). This pleading states:

> Defendant bank argues that Court V (which concerns the $25,000 check) is barred by the Statute of Limitations. Plaintiff points out that its motion for summary judgment is limited to Count IV, which concerns only the $44,500 check. There is no dispute that the complaint was filed within the statute as to this latter count.

Plaintiff's Response, p. 2. Plaintiff's failure to address this aspect of National's motion has the effect of conceding the point. *See United States v. Giovannetti,* 919 F.2d 1223, 1230 (7th Cir.1990). Summary Judgment is granted for National on Count V.

## CONCLUSION

The parties' cross motions for summary judgment on Count IV are both denied. National's motion for summary judgment on Count V is granted.

IT IS SO ORDERED.