2019 IL App (1st) 190037-U
Order filed December 6, 2019

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-0037

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| AFFILIATED HEALTH GROUP, LTD., AMERICAN HEALTH CENTER, LTD., DIMENSIONS MEDICAL CENTER, LTD., ACCESS HEALTH CENTER, LTD., ACU HEALTH CENTER, LTD., ADVANTAGE HEALTH CARE, LTD., AANCHOR HEALTH CENTER, LTD., FORESTVIEW MEDICAL CENTER, LTD., MICHIGAN AVENUE CENTER FOR HEALTH, LTD., ACE HEALTH CENTER, LTD., CENTER FOR FAMILY HEALTH CARE, SC, VIJAY L. GOYAL, MD, and VINOD K. GOYAL, MD, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 16 L 62007 |
| IRINA NAKHSHIN, INNA KOGAN-SHATS, EUGENE NAKHSHIN a/k/a Yevgeny Nakhshin, BORIS KOGAN-SHATS, JOAN E. SANJI, CHRISTIE KUEFNER, MITCHELL NAKHSHIN, DANIELLE M. NAKHSHIN, and MARINA NAKHSHIN SILVERSTEIN, | ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Mitchell Nakhshin, Danielle M. Nakhshin, and Marina Nakhshin Silverstein, | ) ) ) ) | Honorable Jeffrey L. Warnick, Judge, presiding. |

Defendants-Appellees).                                    )

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The dismissal of plaintiffs' complaint, pursuant to section 2-615 of the Code of
Civil Procedure, is reversed in part where there were allegations that defendants
received checks from accounts that held embezzled funds and set forth sufficient
facts to state a cause of action for unjust enrichment. We affirm the trial court's
dismissal with prejudice of the remainder of plaintiffs' unjust enrichment claim as
well as plaintiffs' entire conversion claim where the key allegations were mere
conclusions.

¶ 2    Plaintiffs-appellants, physicians and healthcare centers, initiated this action to recover
funds which were embezzled by their employees, against multiple defendants, including
defendants-appellees, Mitchell Nakhshin, Danielle M. Nakhshin, and Marina Nakhshin Silverstein
(the children). Plaintiffs alleged that embezzled funds were transferred to the children by their
parents, Irina Nakhshin and Eugene Nakhshin. Plaintiffs appeal from the dismissal, with prejudice,
of counts II (unjust enrichment) and III (conversion) of their fourth amended complaint against the
children, pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-
615 (West 2018)). We find plaintiffs failed to state a claim for conversion against the children and
affirm the dismissal of count III. We find that plaintiffs stated a cause of action for unjust
enrichment based on checks issued by Irina and Eugene to the children and reverse the dismissal
as to those claims. However, plaintiffs failed to state a cause of action for unjust enrichment as to

funds held by Marina and her husband Jason Silverstein in certain bank accounts which came from unknown sources.[1]

¶ 3                                    I. Background

¶ 4                                 A. Initial Complaint

¶ 5     On February 2, 2016, plaintiffs-appellees, Dr. Vijay L. Goyal and Dr. Vinod K. Goyal, along with 11 healthcare centers, owned and operated by the Goyals (plaintiff entities)[2], filed an initial complaint against defendant Eugene, not a party to this appeal, alleging claims of civil conspiracy, unjust enrichment, and conversion of personal property. The initial complaint alleged that, from 1992 through 2013, Irina and Inna Kogan-Shats, as employees of plaintiff entities, embezzled millions of dollars by stealing hundreds of payment checks made payable to plaintiff entities from health insurance carriers. Irina then allegedly transferred these embezzled funds to her husband, Eugene, who used the money for cruises and international travel.

¶ 6     On June 1, 2016, Eugene filed a combined motion to dismiss the initial complaint pursuant to sections 2-615, 2-619, and 2-619.1 of the Code (735 ILCS 5/2-615, 5/2-619, and 5/2-619.1 (West 2016)). On August 11, 2016, plaintiffs filed a motion for leave to file a first amended complaint to join additional defendants and add two causes of action for fraudulent misrepresentation and violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§ 1962(a), (b), (c), (d) (2012)), and later amended the motion to name

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

[2] Plaintiff entities are Affiliated Health Group, Ltd., American Health Center, Ltd., Dimensions Medical Center, Ltd., Access Health Center, Ltd., ACU Health Center, Ltd., AAnchor Health Center, Ltd., Forestview Medical Center, Ltd., Michigan Avenue Center for Health, Ltd., Ace Health Center, Ltd., Center for Family Health Care, SC, and Advantage Health Care, Ltd.

additional defendants. The trial court denied Eugene's motion to dismiss and granted plaintiffs' motion for leave to file a first amended complaint.

¶ 7                                    B. The First Amended Complaint

¶ 8     Plaintiffs filed a ten-count first amended complaint, on September 8, 2016, adding, *inter alia*, an unjust enrichment claim against Mitchell, alleging that he was gifted embezzled funds from his parents, Irina and Eugene. Plaintiffs also added various individuals and entities[3] as defendants. Eugene filed an answer to plaintiffs' first amended complaint and affirmative defenses on October 3, 2016.

¶ 9                                    C. Second Amended Complaint

¶ 10    On November 3, 2016, plaintiffs sought leave to file a second amended complaint to add two causes of action against The Grand Victoria Casino (the casino), for fraudulent misrepresentation and omission and fraudulent concealment. The trial court granted leave to file a second amended complaint *instanter* on November 28, 2016.

¶ 11                                   D. Third Amended Complaint

¶ 12    On January 4, 2017, plaintiffs filed a motion for leave to file a third amended complaint, which was granted on January 19, 2017. After several extensions, plaintiffs filed a verified third amended complaint on July 14, 2017, adding Danielle, Mitchell's wife, and Marina, Irina and Eugene's daughter, as defendants. Only two counts, an unjust enrichment claim and a conversion of personal property claim, were brought against the children. On August 23, 2017, the children filed a combined motion to dismiss the verified third amended complaint pursuant to sections 2-

---

[3] These additional defendants were Nevada Landing Partnership and Illinois RGB, LLC, d/b/a both Elgin Riverboat Casino and The Grand Victoria Casino, Irina Nakhshin, Inna Kogan-Shats, Pyotr Tsaytak, Joseph Ingold, C.P.A., and Christine Kuefner (Christine).

615, 2-619, and 2-619.1 of the Code (735 ILCS 5/2-615, 5/2-619, and 5/2-619.1 (West 2016)). The trial court granted the section 2-615 motion to dismiss, without prejudice, and denied the section 2-619 motion, on March 23, 2018.

¶ 13                                    E. Fourth Amended Complaint

¶ 14     On May 22, 2018, plaintiffs filed the operative fourth amended complaint (the complaint) and added additional allegations as to the claims of unjust enrichment (count II) and conversion (count III) against the children. As relevant to the claims against the children, the complaint alleged as follows.

¶ 15     From 1992 through 2013, Irina and Inna, as employees of plaintiff entities, operated a scheme to embezzle the rightful funds of plaintiffs.[4] Irina and her husband, Eugene, along with Inna and her husband, Boris Kogan-Shats, incorporated eight sham entities with names similar to those of plaintiff entities (sham entities) and opened business checking accounts affiliated with the sham entities at Devon Bank (Devon) and TCF Bank (TCF). Irina and Inna allegedly stole hundreds of health insurance payments made by checks to plaintiff entities, and without permission, indorsed the checks and deposited them into the business checking accounts of the sham entities. Devon and TCF accepted the checks and credited the business checking accounts. Thereafter, Irina and Inna transferred the money from the business checking accounts to personal bank accounts at Devon and Citibank they co-owned with their husbands.

---

[4] The complaint alleged that in a criminal proceeding, Irina pled guilty to embezzlement and fraud and was ordered to pay restitution to plaintiffs. Additionally, the complaint alleged that a civil lawsuit was filed by plaintiffs against Irina, Inna, and Boris for embezzlement in the Circuit Court of Cook County, Law Division, (case number 13 L 11485). The record shows that in that matter, a default judgment was entered against all three defendants.

¶ 16    Once the money was deposited into the personal accounts, Irina and Eugene allegedly withdrew cash and gambled and "laundered" the funds at the casino in an effort to turn the embezzled funds into legitimate funds. Based on statistics from the casino, attached to the complaint, between 2002 through 2013, Eugene gambled 582 times with approximately $11,000,000, averaging $18,400 per visit and had a win percentage rate of 97.11%. Irina gambled 694 times with approximately $15,200,000 averaging $17,000 per visit and had a win percentage rate of 94.90%. During this time period, Eugene also earned a salary of approximately $4,000 a month. Eugene's salary was deposited into the joint Citibank account and comingled with embezzled funds.

¶ 17    The complaint alleged that Irina and Eugene made several agreements regarding the embezzlement scheme, including an agreement that they would gift embezzled funds to the children. According to the complaint, pursuant to their agreement, Irina and Eugene gifted embezzled funds to the children in the form of checks and cash from the personal accounts. The children were to hold some of the gifted money in trust for Irina and Eugene, should the embezzlement be discovered, and Irina and Eugene need funds. Eugene's salary was used solely for the living expenses of Irina and Eugene and none of it was gifted to the children or gambled.

¶ 18    Between September 3, 2011 and April 10, 2013, Mitchell and Danielle received eleven checks totaling $173,000, drawn from Irina and Eugene's personal accounts at Citibank and Devon.[5] Plaintiffs alleged the gifts were made without consideration and Mitchell and Danielle were not *bona fide* holders in due course of the funds. Mitchell and Danielle allegedly "knew" that

---

[5] The complaint listed the dates and amounts of the checks, the check numbers, and identified the checks as coming from either the Devon or the Citibank account.

Irina, with help from Eugene, embezzled funds from plaintiffs. Mitchell and Danielle "knowingly" received thousands of dollars in embezzled funds, which they knew were stolen from plaintiffs, and they deposited those stolen funds into their joint bank accounts.

¶ 19    As to Marina, the complaint alleged that "upon information and belief," embezzled funds were deposited into joint savings and checking accounts she co-owned with Jason, in order to subsidize their lifestyle. Jason allegedly earned approximately $5,000 per month and "upon information and belief," Marina was unemployed. Between 2011 and 2013, checks and cash, totaling $50,300, from unknown sources, were deposited into a Chase bank account owned jointly by Marina and Jason. According to the complaint, it was "highly likely" the checks and cash were from Irina and Eugene. Plaintiffs claimed Marina had an account at Smarty Pig and ING, each "believed to be worth over $100,000" and that it was "highly probably [*sic*]" that those accounts were funded by Irina and Eugene. The complaint also alleged that Irina drafted three checks from the Devon personal account to Marina and Jason between June 2011 and August 2012, totaling $10,100.[6] Marina "knew" the funds she received were illegally obtained. Marina and Jason allegedly used the funds in their accounts for vacations and hotel stays from 2011 through 2013. After the embezzlement was discovered, Marina and her husband allegedly stopped travelling and reduced their monthly expenses.

¶ 20    On July 10, 2018, the children filed a combined motion to dismiss counts II and III of the complaint, pursuant to sections 2-615, 2-619, and 2-619.1 of the Code (735 ILCS 5/2-615, 5/2-619, and 5/2-619.1 (West 2016)), arguing that plaintiffs failed to allege sufficient facts to support

---

[6] The complaint listed the dates and amounts of the checks and identified that the account was Devon.

their unjust enrichment and conversion actions, and that both counts were barred by the applicable statutes of limitations.

¶ 21 On December 11, 2018, after a hearing, the trial court found the allegations were insufficient to state claims of conversion and unjust enrichment against the children and granted the section 2-615 motion to dismiss, with prejudice. The trial court determined there was no need to rule on the section 2-619 motion to dismiss. The dismissal order stated that "pursuant to Rule 304(a), the Court finds there is no just reason to delay appeal or enforcement of this Order."

¶ 22 A timely notice of appeal was filed on January 4, 2019.

¶ 23                                    II. Analysis

¶ 24 On appeal, plaintiffs argue that the trial court erred in granting the children's section 2-615 motion and dismissing counts II (unjust enrichment) and III (conversion) against the children, with prejudice, as these counts were sufficiently pled, and also erred by granting the dismissal without allowing them leave to replead.

¶ 25 A section 2-615 motion challenges the legal sufficiency of the complaint based on defects apparent on the face of the pleading. *Ledeaux v. Motorola, Inc.*, 2018 IL App (1st) 161345, ¶ 14. The court accepts as true all well-pleaded facts, as well as any reasonable inferences flowing from those facts. *Id.* Conclusions of law and conclusory factual allegations unsupported by specific facts are not deemed admitted. *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 930-31 (2004).

¶ 26 "The critical inquiry in deciding upon a section 2-615 motion to dismiss is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Board of Directors of*

*Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). A court should not dismiss a cause of action under section 2-615 unless the pleadings clearly show that no set of facts can be proven that would entitle a plaintiff to recover. *Id.* Our review of a dismissal is *de novo*. *Id.* Under this standard we are not bound by the trial court's reasoning or decision. *State Automobile Mutual Insurance Co. v. Habitat Construction Co.*, 377 Ill. App. 3d 281, 291 (2007).

¶ 27                          A. Dismissal of Count II (Unjust Enrichment)

¶ 28     We first consider the dismissal of plaintiffs' unjust enrichment claim against the children.

¶ 29     To state a claim for unjust enrichment, a plaintiff must allege that the defendant unjustly retained a benefit to the plaintiffs' detriment in violation of the fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). A cause of action based upon unjust enrichment does not require fault or illegality on the part of the enriched party who retains the benefit; the essence of the cause of action is that one party is enriched and it would be unjust for that party to retain the enrichment. *National Union Fire Insurance Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶ 67.

¶ 30     The complaint alleged that, for almost twenty years, Irina, with the help of Eugene, embezzled millions of dollars of health insurance payments payable to plaintiff entities. Irina first deposited the health insurance payments into the business accounts of the sham entities and later deposited the funds into her personal bank accounts at Devon and Citibank, which she co-owned with Eugene. Irina and Eugene agreed to gift stolen funds to the children. Plaintiffs maintain that Eugene's salary, which was deposited into the Citibank account, covered only the living expenses of Irina and Eugene and that the money gifted was solely stolen funds.

¶ 31    From 2011 to 2013, Irina and Eugene allegedly endorsed at least eleven checks from their personal accounts at Devon and Citibank to Mitchell and Danielle, totaling $173,000. Mitchell and Danielle allegedly "knew" of the embezzlement scheme, "knowingly" received thousands of dollars of embezzled funds, and knew the gifted funds were stolen.

¶ 32    The allegations against Marina similarly alleged that Irina drafted three checks from the Devon personal account to Marina and Jason between June 2011 and August 2012, totaling $10,100. However, count II also contains allegations that Marina and Jason's Chase account, during this time, received $50,300 in checks and cash from unknown sources and that Marina held accounts at Smarty Pig and ING, each "believed" to be worth more than $100,000. The complaint alleged that it was "highly likely" and "highly probably [*sic*]" that these accounts were funded by Eugene and Irina with embezzled funds. The complaint alleges that Marina "knew" that the funds she received from Irina and Eugene were illegally obtained.

¶ 33    Based on these allegations, plaintiffs are seeking recovery of funds on unjust enrichment grounds that were stolen by a third-party, Irina, but transferred to the children. Where a plaintiff is seeking recovery of a benefit that was transferred to the defendant by a third party, the benefit would be unjustly retained where: "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead [citations], (2) the defendant procured the benefit from the third party through some type of wrongful conduct [citations], or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant [citations]." *HPI Health Care*, 131 Ill. 2d at 161-62.

¶ 34    Plaintiffs argue that scenario two applies because they sufficiently alleged that the children received embezzled funds through their wrongful conduct where Mitchell and Danielle "knew" of

the embezzlement and "knowingly" received embezzlement funds, and where Marina "knew" the funds received from Irina and Eugene were illegally obtained. These allegations in the complaint are mere conclusions without factual support of any kind. See *Griffin v. Universal Casualty Co.*, 247 Ill. App. 3d 1056, 1065 (1995) (alleging that the defendant "knew or should have known" without specific factual allegations was a conclusion of fact); *Plocar v. Dunkin Donuts of America, Inc.*, 103 Ill. App. 3d 740, 747 n.1 (1981) (alleging that defendant knew conduct would result in severe emotional distress without specific facts was merely a conclusion). A pleading which merely paraphrases the elements of a cause of action in conclusory terms is not sufficient. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999). We find that the allegations are insufficient, under the second *HPI Health Care* scenario, to establish the children were unjustly enriched by their wrongful conduct.

¶ 35     In the alternative, plaintiffs argue that, under the third *HPI Health Care* scenario, they have adequately alleged that they have a better claim to the gifted funds because those funds consisted of the insurance payments made to plaintiff entities and wrongfully stolen by Irina. We agree.

¶ 36     To reiterate, plaintiffs have pleaded a scheme in which Irina embezzled insurance proceeds to be used in part as gifts to the children. Plaintiffs alleged how the embezzled funds flowed to the sham accounts and then to the personal accounts of Irina and Eugene at Citibank and Devon. Mitchell and Danielle received and deposited eleven checks which were drawn on Irina and Eugene's personal accounts at Devon and Citibank. Marina received and deposited three checks drafted by Irina from the Devon account. Plaintiffs alleged the children did not provide consideration for these gifts and are not *bona fide* holders of the funds in due course. Plaintiffs alleged a detriment where they have lost business expansion and strengthening opportunities, and

they have been forced to take out loans, sell real property, incur credit card debt and to incur substantial litigation costs, due to the embezzlement scheme. Thus, plaintiffs alleged Irina and Eugene illegally obtained funds belonging to plaintiffs, which Irina and Eugene transferred by checks to Mitchell and Danielle and Marina, to the benefit of the children and to plaintiffs' detriment.

¶ 37    The children argue that the embezzled funds were allegedly comingled with Eugene's salary, and therefore plaintiffs did not allege a better claim to the funds which were gifted to the children. However, the complaint alleged that Eugene's salary was deposited only into the Citibank account. The complaint does not allege the salary was comingled with embezzled funds in the Devon account. Several of the checks to the children were from the Devon account. Further, according to the complaint, Eugene's salary was used solely to pay for the living expenses of Eugene and Irina and were not used to gift to the children. We conclude, at this point in the pleading stage and construing the facts in the light most favorable to plaintiffs, that plaintiffs have adequately alleged a better claim to the funds gifted by the checks from the Citibank and Devon account as specifically set out in the complaint. Those allegations are thus sufficient to survive dismissal under the third *HPI Health Care* scenario.

¶ 38    We reach a different conclusion as to the allegations of unjust enrichment relating to those accounts Marina and Jason held with Chase, Smarty Pig, and ING. Plaintiffs allege that the accounts were "highly likely" and "highly probably [*sic*]" funded by Eugene and Irina. These allegations are no more than speculation that embezzled funds were transferred to these accounts and are wholly insufficient to support a claim that plaintiffs have a better claim to those funds. Illinois is a fact pleading jurisdiction, and "mere conclusions of law or fact unsupported by specific

factual allegations in a complaint are disregarded on a motion to dismiss." *Doe v. Calumet City*, 161 Ill. 2d 374, 385 (1994). While the plaintiff need not plead evidence, mere conclusions are insufficient to withstand a motion to dismiss. *Marshall v Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). These claims lack factual support and the trial court's dismissal as to these claims was proper.

¶ 39    The children next contend that plaintiffs' unjust enrichment count failed entirely, as plaintiffs have an adequate remedy at law. *Seasons Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 648, 656 (1995). Specifically, the children contend that plaintiff filed prior lawsuits against Devon and Irina, Inna, and Boris, and thus plaintiffs have an adequate remedy at law. The children attached three volumes of documents relating to prior proceedings in an appendix to their appellees' brief. They assert that these prior actions were based on the stolen health insurance checks, which were then deposited into the bank accounts for the sham entities and which are the basis of the unjust enrichment action against the children.

¶ 40    However, a section 2-615 motion is confined to "those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record." *Mount Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115 (1995). The children, in a footnote, contend that all of the documents submitted in the appendix are subject to judicial notice under *Aurora Loan Servs., LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37, which held that "[a]n appellate court may take judicial notice of readily available verifiable facts if doing so 'will aid in the efficient disposition of a case.' " However, we find judicial notice is not appropriate here, and decline the children's invitation to review and parse these documents which were not part of the complaint and not brought to the trial court's attention. We further find

this argument may be best suited for a section 2-619 motion. Additionally, from our review of the record, it appears the children did not raise an adequate remedy at law argument in their motion to dismiss, nor did the trial court address this argument. Contentions not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Department of Transportation for and on Behalf of People v. GreatBanc Trust Company*, 2018 IL App (1st) 171315, ¶ 13.

¶ 41    In summary, plaintiffs have stated a claim for unjust enrichment against Mitchell, Danielle, and Marina as to the checks drafted from the personal accounts at Citibank and Devon, but have failed to state a claim for unjust enrichment against the funds in Marina's Chase, Smarty Pig, and ING accounts.

¶ 42                    B. Dismissal of Count III (Conversion)

¶ 43    Next, we review the trial court's dismissal of Count III for conversion.

¶ 44    To state a cause of action for conversion, a plaintiff must allege: an unauthorized and wrongful assumption of control, dominion, or ownership by the person over the property of another; his right in the property; his right to the immediate possession of the property; and a demand for possession of the property. *Douglas v. Wones*, 120 Ill. App. 3d 36, 41 (1983). The essence of conversion is the wrongful deprivation of property to the owner or the person entitled to possession. *Landfield Finance Co. v. Feinerman*, 3 Ill. App. 3d 487 (1972). An action in conversion may be had without establishing malice, culpability, or conscious wrongdoing. *Douglass v. Wones*, 120 Ill. App. 3d 36, 41 (1983) (citing *Landfield Finance Co. v. Feinerman*, 3 Ill. App. 3d 487, 480 (1972)).

¶ 45    Even if we were to accept that the complaint sufficiently alleged the children wrongfully and without authority were in control of plaintiffs' property when Irina and Eugene transferred

them embezzled funds, plaintiffs failed to allege a demand to the children for the return of the funds. For this reason, the conversion claim was subject to dismissal.

¶ 46    Plaintiffs argue they did not have to allege a demand because "one who knowingly takes possession of personal property which belongs to another is liable to the person whose property has been appropriated whether or not a demand is made for the return of property." *Landfield v. Feinerman*, 3 Ill. 3d 487, 490 (1972). However, as we found above, the allegations as to the children's knowledge of the embezzlement scheme and the stolen nature of the gifted funds were mere conclusions without supporting allegations of fact. Therefore, as discussed *supra*, such allegations are insufficient.

¶ 47    Accordingly, the trial court properly dismissed count III for conversion against the children.

¶ 48                              C. Dismissal with Prejudice

¶ 49    Finally, plaintiffs argue that the trial court erred by dismissing counts II and III with prejudice, and that they should therefore have an opportunity to amend the complaint. We disagree.

¶ 50    Plaintiffs do not have an "absolute right" to an amendment of their pleading. *Phillips v. DePaul University*, 2014 IL App (1st) 122817, ¶ 91. "The decision to grant or deny an amendment rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *Id.* (citing *Matanky Realty Group, Inc. v. Katris*, 367 Ill. App. 3d 839, 844 (2006)). One of the primary factors that a trial court should consider in making this determination is whether the proposed amendment would cure the defective pleading. *Hytel Group Inc. v. Butler* (citing *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 113, 125-126 (2010)). A trial courts' denial of leave to amend is not an abuse of discretion if plaintiffs do not present the proposed amendment.

*Loftus v. Mingo*, 158 Ill. App. 3d 733, 745 (1987); and see *Hytel Group, Inc.*, 405 Ill. App. 3d 113, 128 (2010) ("Where the party seeking to amend does not attach a proposed amended pleading to its motion or otherwise specify the new allegations that it would include, a trial court has no basis to consider whether the amendment would cure the defects in the current pleading."). Plaintiffs did not provide an amended complaint nor any indication as to how an amendment would contain facts that would cure the defects. Accordingly, the trial court did not abuse its discretion in dismissing with prejudice count III and those portions of count II the dismissal of which we affirm on appeal.

¶ 51                                    D. Section 2-619 Motion

¶ 52    The children also sought the dismissal of the unjust enrichment and conversion claims on the basis they were barred by the applicable statutes of limitations, arguments raised in the children's section 2-619 motion. In their brief, the children take the position that since the trial court did not rule on the section 2-619 motion, it should not be addressed by this court. Although we may affirm the decision of the trial court for any reason appearing in the record; we are not required to search the record for reasons to affirm. *Quinn v. Board of Election*, 2018 IL App (1st) 182087, ¶ 30 (citing *Dunlap v. Illinois Founders Insurance Co.*, 250 Ill. App. 3d 563, 569 (1993)). In some circumstances, our review of the trial court's decision should be limited to the issues the trial court actually addressed and decided. *Id.* We believe that this appeal presents such a circumstance, where the trial court found no reason to rule on the section 2-619 motion, only plaintiffs addressed the issue on appeal, and the children have taken the position that it should not be addressed on appeal.

¶ 53                                    III. Conclusion

¶ 54    For the foregoing reasons, we affirm the dismissal with prejudice of count II as it relates to Marina's Chase, Smarty Pig and ING accounts, and also of the entirety of count III. We reverse the dismissal of count II against Mitchell and Danielle and the dismissal of count II as to the three checks allegedly drafted by Irina and received by Marina. We remand the matter for further proceedings in accordance with this ruling.

¶ 55    Affirmed in part, reversed in part, and remanded.